INHABITANTS OF MILFORD *vs.* BANGOR RAILWAY & ELECTRIC COMPANY.

Penobscot.    Opinion December 20, 1909.

*Waters and Watercourses.    Municipal Fire Protection.    Contracts.*

Where the defendant company made a contract with the plaintiff town to furnish water to the plaintiff town, for protection against fire, and to afford as an effective service as furnished to the City of Old Town, and it appeared that the plaintiff town in consideration of a reduced rental agreed that the main pipe should be six inches in diameter instead of eight inches as in Old Town, *held* that the defendant company was only bound to use reasonable care and diligence to furnish a fire service as near the efficiency of the Old Town service as the six inch pipe would enable it to do; that it was not bound to furnish the same efficiency as the Old Town plant furnished, but only such efficiency as could be reasonably obtained with the plant in the plaintiff town.

A water company contracting to furnish water for fire protection is not liable for municipal property burned through the company's failure to furnish an adequate supply, in the absence of an express undertaking to furnish protection to such property.

*Milford* v. *Bangor Ry. & Electric Co.*, 104 Maine, 233, affirmed.

On motion by defendant.    Sustained.

Action on the case brought by the inhabitants of the town of
Milford against the defendant corporation to recover the value of
the town hall and certain sidewalks and hose, which were the prop-
erty of the municipality and were destroyed by fire in April, 1905.
(See Inhabitants of *Milford* v. *Bangor Railway & Electric Com-
pany*, 104 Maine, 233.)    Plea, the general issue. · Verdict for
plaintiffs for $4,101.    The defendant then filed a general motion
for a new trial.

The case is stated in the opinion.

*Louis C. Stearns, Louis C. Stearns, Jr., and Taber D. Bailey*,
for plaintiffs.

*E. C. Ryder*, · for defendant.

SITTING :    WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

WHITEHOUSE, J.    This is an action on the case brought by the
inhabitants of the town of Milford against the defendant corpora-
tion to recover the value of the town hall and certain sidewalks and
hose, which were the property of the municipality and were destroyed
by fire in April, 1905.    It is alleged that this loss was caused by
the negligence of the defendant in failing to perform its contract to
supply through its pipes water of sufficient current, pressure and
volume to extinguish fires within the range of its hydrants.

A general demurrer to the declaration was filed by the defendant ;
and it was stipulated by the parties that the cause should be heard
by the Law Court on the amended declaration, demurrer and joinder,
that if the demurrer was overruled the defendant should have the
right to plead anew, and if sustained, the plaintiff should be non-
suited.

The count in the declaration especially relied upon by the plain-
tiffs was the "amended count," which is as follows :

"In a plea of the case, for that on the 28th day of April, A. D.
1905, the said inhabitants of Milford were the owners of a certain
public building called a Town Hall, of the value of five thousand

dollars, and certain planks and timbers constituting a sidewalk of the value of two hundred and fifty dollars, and certain fire hose of the value of two hundred and fifty dollars ; and the plaintiffs aver that on the said 28th day of April 1905, the defendant had engaged and was bound and obliged to furnish through its mains, conduits, pipes and hydrants, the same being laid and placed in the streets of said plaintiffs' town, water of sufficient current pressure and volume to extinguish fire within range of said hydrants, and especially and particularly fires orignating in or communicated to plaintiffs said building and property, in consideration of the sum of eight hundred dollars per annum paid to it by said plaintiffs ; now the plaintiffs say that on said 28th day of April a fire started in a board pile at a considerable distance, to wit, a quarter of a mile, from the plaintiff's said buildings and property, which said fire might easily have been extinguished and put out had there been any pressure and volume of water in said mains and hydrants, but the defendant unmindful of the duty and obligations in this behalf wrongfully, carelessly and negligently suffered and allowed said mains, pipes and hydrants to be destitute of any current of water or sufficient pressure, force and volume to be of any value or utility in extinguishing said fire or any fire, so that the plaintiffs were unable by the use of the greatest diligence and the strongest efforts to quench the fire in said pile of boards, although they were in the use of due care in this behalf ; and the plaintiffs aver that said fire in said board pile was communicated to the said buildings and property of plaintiffs by sparks, firebrands or cinders, so that the same were utterly burned and consumed, although hydrants were at hand and in close proximity to said buildings and property, and competent and capable men were at hand with suitable hose and appliances ready to extinguish the fires started by said cinders and fire brands upon plaintiffs said building and property and were prevented from doing so solely by the lack and want of water in said hydrants which it was the duty and obligation of said defendant to furnish. And the plaintiffs aver that the sole cause of the said loss and damage was the wrong- ful neglect of duty of said defendant, to the damage of said plaintiffs (as they say) the sum of six thousand dollars,"

It has been seen that the declaration as amended in the new count relied upon, alleged that "the defendant had engaged and was bound and obliged to furnish through its mains, conduits, pipes and hydrants, the same being laid and placed in the streets of said plaintiff town, water of sufficient pressure and volume to extinguish fires within the range of said hydrants, and especially and particularly fires originating in, or communicated to plaintiff's said building and property." Upon the strength of these allegations, admitted by the demurrer to be true, the sufficiency of the declaration was determined, and the demurrer overruled. The opinion of the court is reported in *Milford* v. *B. R. & E. Co.*, 104 Maine, 233. To the doctrine of that opinion founded upon the definite and specific allegations of the plaintiff's amended declaration the court still adheres.

The cause came on for trial before the jury at the January term, 1909, upon the defendant's plea of the general issue, and it was then discovered that the written contract between the parties introduced in support of the declaration did not contain the particular stipulations above quoted upon which the opinion of the court was based in overruling the demurrer. But the cause was submitted to the jury under instructions to which no exceptions were taken, and a verdict was returned in favor of the plaintiff for $4,101. The case now comes to this court upon the defendant's motion to set aside the verdict as against the law and the evidence.

By the terms of the contract introduced in evidence and actually made by the parties, the defendant agrees that it will provide said town with sixteen post hydrants and water for the same, and that these hydrants shall be so placed that they will afford proper protection against fire; that each hydrant shall have two nozzles and be supplied by pipes at least four inches in diameter; that the "water works to be established under the contract shall be supplied by a pump or pumps of a capacity of not less than one million gallons per day, and that they may be operated by direct pressure or by reservoirs or by stand pipe system; that the main pipe as far as the first branches shall be not less than six inches in diameter . . . and shall be equal in all respects and afford as effective service as that furnished to the city of Old Town."

There is no specific averment either in the original declaration or the amended count, that these special stipulations in the contract were not performed, and the uncontradicted evidence at the trial shows that all of them with the possible exception of that last named were unquestionably fully performed by the defendant. With respect to the last stipulation that the main pipe shall afford as effective service as that furnished to the city of Old Town, it appears that the plaintiffs were advised to have the main pipe eight inches in diameter but they were unwilling to incur the additional expense, and in consideration that the annual rental should be reduced to $800, agreed that the main pipe should be six inches in diameter. The presiding Justice therefore properly instructed the jury upon this branch of the case as follows:

"The defendant company was only bound to use reasonable care, reasonable diligence to furnish a fire service as near the efficiency of the Old Town service as the 6 inch plant named in the contract would enable them to do; that they were not bound to furnish the same efficiency as the Old Town plant furnished, but only such efficiency as could be reasonably obtained with the plant put in at Milford."

The defendant accordingly insists that the contract actually made between the parties was in effect only such as is ordinarily made by a water company to establish a plant and supply water without any stipulation to do any specific thing or to afford protection to any particular property.

In support of the motion the defendant earnestly contends that in making this contract with the water company for the protection of property against fire, the town acted for the general public good; that in the absence of an express covenant to do a particular thing, the contract does not protect any particular property, but is for the benefit of all, and that the town as a property owner derives the same benefit that every other property owner does and no other or different advantage or protection; that since there is no express covenant in the contract, the security afforded the plaintiff's property was only the same security which in the exercise of its governmental functions, the plaintiffs had obtained for the whole

town ; that the defendant simply agreed to furnish a water system
and supply it with water, and did not agree to extinguish fires or to
insure property against loss by fire, and that, consequently, in the
absence of any special agreement to furnish a certain pressure, or a
certain amount of water, or specifically to protect the plaintiff's
property, no action can be maintained to recover for the loss of
property by fire. It is confidently claimed that since the reasoning
adopted and the authorities adduced in support of the conclusion
reached in the former opinion on the demurrer had reference solely
to the averment of the specific stipulations which it was discovered
at the trial, were not contained in the contract, that opinion is not
authority upon the questions raised under the pending motion now
before the court.

In *Hone* v. *Presque Isle Water Company*, 104 Maine, 217, it
was held that where a public service water company makes such a
contract with a municipality to furnish a supply of water for
general fire purposes without a specification of any particular thing
to be done to that end, and without any stipulation respecting
liability for losses by fire, or where the duty of such a water com-
pany to furnish water arises solely from an accepted service for
general fire purposes, individual owners of property destroyed by
fire cannot maintain an action on the case against the water com-
pany for a loss resulting from the negligent failure of the company
to furnish a sufficient supply of water. In that case the court said
in the opinion : "But the proposition advanced by the plaintiffs
would require water companies to assume, to some extent, the
responsibility of insurers, and it does not satisfactorily appear that
such a doctrine would be more in harmony with considerations of
public policy, or more consonant with reason and justice than the
established rule. Ample opportunities are already afforded for all
property owners to obtain insurance against losses by fire, and the
assumption of such risks by water companies, even in a modified
degree, would result in a double insurance and largely increased
water rates. Furthermore, capital would not readily seek invest-
ments in enterprises involving a public service exposed to incalcu-
lable hazards and constant litigation. In the practical administra-

tion of the law the established rule has not been found the cause of extraordinary hardships or the occasion for exceptional complaints."

It is contended in behalf of the defendant that these general observations are equally pertinent in the case at bar. As before intimated the question now raised upon the defendant's motion has never before been presented to this court, and no case has been cited by the learned counsel which can be deemed a direct authority for the plaintiff's contention. The only case to which the attention of the court has been called tending directly to support the defendant's contention is that of *Ukiah* v. *Ukiah Water City Co.*, 142 Cal. 173. (75 Pac. Rep. 773.) In that case it was held that "Where a municipal corporation enters into a contract with a company to supply water for the extinguishment of fires through hydrants, connected with its mains, such contract being entered into for general purposes and for the benefits of all its inhabitants, no protection to any specified property being contemplated, the relation of the water company is not different, as to the property of the municipality from the relation of any of its citizens to such company, and it cannot recover for the loss of its property from the failure of the water company to furnish an adequate supply of water as provided for in such contract."

In the opinion the court adopting the language of the trial judge said: "It is true that no written contract covering the time of the fire is shown, but no particular form is prescribed by the statute for such contracts, and the evidence forces the conclusion that, at the time of the fire, the same relations existed between the town and the defendant as to the furnishing of water for general purposes, as ordinarily exist between the private consumer and the water company, as to water for domestic purposes."

"No formal written contract seems to be required by our statute to establish this relationship between the municipality and the company.

"The evidence clearly shows that whatever the relationship between plaintiff and defendant was, so far as the furnishing of water for fire purposes is concerned, it was entered into by the town in

the execution of the power conferred upon it to provide protection against fire for the benefit of all the inhabitants, and there is nothing to indicate that the protection of any specific property was contemplated.

"In providing for a water supply for general fire purposes, a municipality exercises the same character of functions that it does when it provides fire-engines and other apparatus for the extinguishment of fires, or when it employs policemen or watchmen for the protection of its inhabitants against crime.

"Where, in the exercise of this power, it establishes or acquires its own system of waterworks, and undertakes to itself provide an adequate supply, it is settled beyond controversy that the city is not liable to its citizens whose property is destroyed by fire for failure to provide an adequate supply, the power vested in the city being in its nature legislative and governmental, requiring the exercise of judgment and discretion.

"Where, instead of acquiring its own system and attempting to itself provide the water for such purposes, it contracts with a water company to furnish such service, thus making such company practically the agent or employee of the city, the many decisions of the appellate courts of other states are practically unanimous in holding, upon apparently the soundest reasoning, that the water company is not liable at the suit of a third person whose property was destroyed by fire, by reason of its failure to supply sufficient water to the town for such purpose.

"Doubtless a water company may so bind itself by contract with a person to furnish him water for the extinguishment of fires as to render itself liable for the value of property of such person destroyed by fire, by reason of its failure to furnish him a sufficient supply of water.

"It may be assumed here that it is within the power of a municipality, as a property owner, to enter into such a contract with a water company for the protection of the property which it owns as a legal individual, but it certainly needs something more than evidence showing an accepted service for general fire purposes to establish such a contract, and the evidence here shows nothing more.

"In providing protection against fire to its inhabitants, the municipality exercises a power conferred solely for the general public good, and from the exercise of which the municipality, as a property owner, derives the same incidental benefit that every other property owner does—no more, no less.

"Yet in each there is a contractual relation.

"The bar to such a recovery in each case is, that the contract was not for the protection of any particular property or person, but was for general benefit of all the property and persons within the municipal limits, and was entered into by the town as a public agency, solely for that purpose, and in the exercise of its power to furnish such general protection.

"I cannot escape the conclusion that the relations between plaintiff and defendant, as shown by the evidence, are susceptible of no other construction; that the defendant assumed no obligation regarding plaintiff's property different from that assumed by it regarding all of the other property within the town; and that the plaintiff, as a property owner, is without right of action."

The opinion proceeds to show that *Paducah Lumber Co.* v. *Water Co.*, 89 Ky. 34, (12 S. W. 445) and *Gorrell* v. *Water Co.*, 124 N. C. 328 (32 S. E. 720) in which the opposite conclusion was reached, are to be distinguished from the California case against the Ukiah Water Company by reason of the fact that in the case of the Paducah Lumber Co. and in the Gorrell case there was an express contract to do certain specific things, which appear to have been equivalent to the stipulations alleged in the plaintiff's declaration in the case at bar. The court then further say : "In each of these cases it will be observed that the court was dealing with contracts whereby the water companies, for valuable concessions and exclusive privileges, had agreed to do and to maintain certain specific things by way of protection from fire, and the gravamen of the charge against each and all of the companies was that they had violated their contract in failing to do the particular things for the doing of which they had expressly contracted. The broad distinction between those cases and the one at bar is, as pointed out in the opinion of the trial judge, that there is no express covenant in

the contract between this plaintiff and this defendant, and the security to plaintiff's property was only the same security which in the exercise of its governmental functions the plaintiff had obtained for the whole town."

In the leading case of *Hadley* v. *Baxendale*, 9 Exch. 353, so often cited as authority in this country, the familiar rule was enunciated that the damages which a party ought to recover as a result of a breach of contract "should be either such as may fairly and substantially be considered as arising naturally, i. e. according to the usual course of things from such breach of contract itself or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it." See also Farnham on Waters and Water Rights, 848. It certainly cannot be reasonably claimed that for the moderate consideration received by a water company under such a contract as the one actually made in the case at bar, it was within the contemplation of both parties that the water company had undertaken to make good the loss which would result from the destruction of the plaintiff's property by fire.

It is the opinion of the court that the legal effect of the contract in this case cannot be distinguished in any essential particular from that considered in *Ukiah City* v. *Ukiah Water Company*, supra, and that the verdict of the jury in this case being against the law, cannot be sustained.

*Motion sustained.*

*Verdict set aside.*