NEW ORLEANS & N. E. R. CO. v. MERIDIAN WATERWORKS CO.

(Circuit Court of Appeals, Fifth Circuit. February 4, 1896.)

No. 438.

CONTRACTS—BREACH—DAMAGES.

The N. R. Co. brought an action against the M. Waterworks Co., alleging that a contract had been made between the parties by which, for a certain price, the waterworks company agreed to furnish, at the shops and tanks of the railroad company, a sufficient supply of water, at not less than 60 pounds pressure, for all purposes for which it might be needed or used; that one of the purposes for which water was needed was the extinguishment of fires which might break out in the shops, and that this was known to the waterworks company; that, during the existence of the contract, a fire broke out in the shops; that at the time there was not a pressure of 60 pounds in the water pipes, but only 25 pounds; that, if there had been a pressure of 60 pounds, the fire could have been extinguished, but, in consequence of the deficient pressure, the shops and tanks were destroyed. Judgment was demanded for the value of the property destroyed. *Held* that, if the allegations of the complaint were proved, the plaintiff would be entitled to recover, and it was therefore error to strike out all the plaintiff's evidence, and direct a verdict for the defend-

ant, on the ground that the contract would not warrant the recovery demanded.

In Error to the Circuit Court of the United States for the Southern District of Mississippi.

J. W. Fewell and Harry Hall, for plaintiff in error.

J. P. Walker and G. I. Hall, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

BOARMAN, District Judge. The plaintiff below, a railroad company, was on the 28th day of January, 1895, the owner of divers railway buildings, machinery, shops, tools, etc., in the city of Meridian. The defendant is the Meridian Waterworks Company. Those two corporations entered into a contract January 28, 1889, as follows: "* * * That, for and in consideration of the payments hereinafter agreed to be made by the said railway company to the waterworks company, the waterworks company agrees to supply and furnish the shops and tanks of the said railway company in Meridian, Miss., with full, adequate, and sufficient supply of good, pure water, not less than 60 pounds pressure, for all purposes for which water may be needed or used at said shops." There is an additional provision as to the contract to convey a supply of water to the said shops for the use of two other railways. We omit it because it has no material bearing under the view we have of the issues. "Said waterworks company further agrees to construct and maintain in good order the necessary pipes and connection to said railroad company's shops." It will be noted that the necessary pipes are to reach the "company's shops." The contract was to run for three years. The railroad was to pay $1,200 per year for the use of an adequate and sufficient supply of water, at 60 pounds pressure. On the 26th of January, 1892, certain of the buildings, tanks, shops, machinery, etc., of the railroad company, were destroyed by fire, and this suit is to recover damages. The plaintiff's declaration, having set out in full the said contract, alleges that among the uses and needs which plaintiff had for said supply and pressure of water at said shops was for the purpose of putting out such fires as might occur in the buildings, etc., at said shops; through the instrumentality of hose and plugs attached to defendant's pipes; and to that end the plaintiff kept at the said shops divers hose, etc., with nozzles and with proper connections with defendant's pipes, which said hose, etc., plaintiff kept constantly at hand, and ready to throw, out of said pipes, under the pressure specified and contracted for, on any fires that might take place or begin in and about said buildings, shops, etc., streams of water, and thus extinguish such fires, and prevent the destruction or injury of plaintiff's said property; and plaintiff avers that the said 60 pounds pressure above referred to and specified in said contract was contracted for, and intended for, and understood by said defendant to be for, the purpose of securing such stream of water, through such hose, etc., from defendant's pipes at the shop,

as would enable plaintiff to use such hose, etc., in the extinguishment of fires occurring in said buildings, shops, etc. The declaration further alleges that "for use in the work done in said shops, and also to protect said shops and the contents thereof from injury and damage by fire, it was necessary and proper to provide said shops with a supply of water of not less than sixty pounds pressure, and that protection against loss and damage by fire was and is one of the ordinary purposes for which water is needed and used at railroad shops, all of which the defendant, at the time and before the time of making the contract hereinafter mentioned, well knew: * * * and that, with full knowledge of all the foregoing, said defendant, on or about the 7th day of November, 1888, proposed to plaintiff to furnish and deliver to it at its said shops and tanks, at a less cost than plaintiff was paying for the water it was then using, obtained elsewhere than from the defendant, a supply of water to be used in conducting the work carried on in its shops, and for filling said tanks, and also to afford a perfect fire protection to said shops and tanks and the contents thereof; and in accordance therewith, on the 28th day of January, 1889, said plaintiff and the defendant entered into a contract in writing, a copy of which is hereto attached, and made part hereof, whereby said defendant, in consideration of the sum of twelve hundred dollars per annum, to be paid to it by the plaintiff, in equal monthly installments, during a period of three years then next ensuing, did undertake and agree to, and with plaintiff, to supply its said shops and tanks, during said period, with a full, adequate, and sufficient supply of good, pure water, at not less than 60 pounds pressure, for all purposes for which water may be used and needed at said shops. And plaintiff says that one of the purposes for which water was needed, and for which it could be used at said shops, was to afford protection to said shops and the contents thereof against fire, there being at said time no other water supply or means at said shops whereby fire occurring there could be extinguished, as defendant well knew; and, as a part of said agreement, said defendant did lay pipes necessary for the purpose of conducting said water to said premises, and did afterwards, at said shops, attach to said pipes certain fire hydrants, to enable the plaintiff to use the said water as a protection against fire, as defendant well knew." To this declaration defendant pleaded the general issue: a jury was impaneled. The plaintiff put in evidence the contract sued on, and offered evidence to prove the allegations of the declaration. Thereupon, when plaintiff closed his case, the defendant, without offering any evidence, moved the court to exclude the plaintiff's testimony, and to direct the jury to find for the defendant; the grounds of the said motion being that the contract sued on was not such as to warrant a recovery of the value of the property destroyed on account of the breach thereof. The court held that the motion was well taken, and the proof of the allegations in the declaration would not entitle plaintiff to recover for loss of plaintiff's property by fire if

he failed to furnish the water as per contract to extinguish fires, and directed the jury to find for the defendant. Plaintiff took his bill of exceptions to the ruling of the court, and now assigns as error the exclusion by the court of the evidence offered and testimony adduced, and to the instruction of the court to the jury to find for the defendant, and, further, to the exclusion of the testimony as to whether the fire in question could have been extinguished had there been a pressure of 60 pounds.

Defendant filed a demurrer, raising the question as to its liability, under the contract, for losses by fire, which was overruled, and plaintiff, later on, filed an amended declaration. Then defendant interposed the general issue. On the trial below, both sides consented to waive a bill of exceptions setting out plaintiff's evidence in support of its allegations. So the issue before us may be considered as if the court below had sustained a general demurrer to the sufficiency of plaintiff's declaration to show a cause of action, and a decree therein had come up for review in this court. On the trial of such a demurrer, the court below would have had to take, as we shall have to take, as true, the allegations of the plaintiff's declaration. The essential allegations therein are, substantially, that plaintiff was the owner of, and was actively using and operating, certain railway buildings, shops, machinery, etc., at Meridian, and needing a supply of water, among other things, for the purpose of protecting its said property from fire, and that there being no other available source from whence to obtain such quantity of water as might be necessary to extinguish fires, as the defendant well knew; that said defendant then owned and operated a system of waterworks, for hire and profit, and plaintiff contracted for a full, adequate, and sufficient supply of good, pure water, not less than 60 pounds pressure, for all purposes for which water may be needed or used at said shops; that, as a part of said agreement, defendant laid its pipes to plaintiff's said premises, and attached thereto fire hydrants, to enable plaintiff to use said water as a protection against fire; and that, to that end, plaintiff kept hose and nozzles on said premises; and that the supply of water at 60 pounds pressure was contracted for, and intended to be used for the purpose of, extinguishing any fire that might break out in said premises; and that, within the terms of the agreement and understanding, a fire did break out, which the plaintiff would have been able to extinguish had the said adequate supply of water contracted for, been furnished to the plaintiff, and had the contract for pressure at not less than 60 pounds been maintained; and that the loss sustained, by plaintiff, in consequence of such fire, was caused solely by the failure of the defendant to comply with the terms of his said contract; that defendant, in agreeing to furnish "a full, adequate, and sufficient supply of good water" for the consideration of $1,200 per annum, at 60 pounds pressure, knew that one of the essential purposes for which plaintiff desired to have such adequate supply of water was that the plaintiff might extinguish fires endangering said shops, etc.

Counsel for defendant in error suggests in his brief that "the gravamen of the complaint is that at the time the fire began, and when the water was attempted to be thrown thereon, defendant failed to perform its contract, in that it failed to furnish 'a full, adequate, and sufficient supply of water, at 60 pounds pressure,' it being alleged that, with such a supply and pressure at the time, plaintiff's servants would have been able to extinguish said fire in its incipiency, and before any considerable damage could have been done to plaintiff's property." In answer to this complaint, he says that fire protection of plaintiff's property was not in the contemplation of either of the parties to the contract. He contends for a rule of evidence, which he states to be "that the intent and meaning of the parties to the contract can be legally ascertained, only, from the language employed and written down in the agreement evidencing the contract between the parties; and that such meaning cannot be legally ascertained from plaintiff's allegations or pleadings, or from witnesses, as to any purpose of the parties not expressed in the agreement." Under a given state of facts, such a contention by the counsel might be well founded, but all the evidence offered by plaintiff to support the averments of his declaration was excluded, and the record does not advise as to what that evidence was, or any part of it may have been. Counsel for appellee (defendant below), on the trial, when the plaintiff was offering his evidence in support of his action, might have been able to state well-founded objections to the admissibility of some of the evidence; and, doubtless, he would have had no difficulty in sustaining his objections, for when the objections urged were to the admission of evidence, the effect of which would be to show a purpose in either of the contracting parties, not expressed in the agreement, or to the admission of evidence the necessary effect of which "would be to add to the contract, and to substitute extraneous matter—the views, the recollections, the impressions of witnesses—for that which they deliberately wrote down and subscribed as expressive of their intent, purpose, and meaning, such is unwarrantable." Under such objections, the court might, or should, have forbidden much of plaintiff's evidence; but we are not prepared to sustain the view of the circuit court in holding that the contract sued on under such allegations as are well pleaded in the declaration would not, under any state of legal evidence, present a suit in which a recovery for damages for the breach of the said contract might be had.

As the case comes to us, that obligation of the contract with reference to furnishing water at not less than 60 pounds pressure was breached. Certainly, the plaintiff, whatever may have been the cause of its failure to extinguish said fire, did not have, at the time of the fire, such an adequate supply of water as that pressure would have given to it. Under such a state of case as might have been shown by legal evidence, admissible under the pleadings, it may be that the plaintiff was entitled to have that amount of pressure in the company's fire hydrants, to which plaintiff's hose were attached at the

time of the fire, and that his failure to do so would render defendant company liable to plaintiff for damages.

By way of illustrating such evidence as might have been admissible under the allegations of the declaration, we think testimony would have been admissible, and of legal value, to show that the defendant corporation might have frequently, in its sales of water, been supplying the city generally or other shops or factory buildings with water for fire purposes, and that the defendant had knowledge that, from time to time, plaintiff or other manufacturing shops had been using the fire hydrants set up by defendant at such shops, for the extinguishment of fires. Such facts, with other admissible evidence, might have been conclusive, or, at least, very persuasive, to show that the 60 pounds of pressure was contracted for because plaintiff, to the knowledge of defendant, wanted and relied on such a pressure for fire purposes. If the terms of the contract are ambiguous or indefinite, and hence of doubtful character, the particular construction by the parties themselves is entitled to great, if not controlling, influence. Topliff v. Topliff, 122 U. S. 121, 7 Sup. Ct. 1057. It is a familiar rule that, in the construction of contracts,—and a rule too, which does not contemplate the allowance of additions thereto, or the interposition between the contracting parties of new purposes or obligations not found in the language of the contract,—courts "may look not only to the language employed, but to the subject-matter and the surrounding circumstances, and avail themselves of the same light which the parties possessed when the contract was made." Merriam v. U. S., 107 U. S. 437, 2 Sup. Ct. 536; Lowber v. Bangs, 2 Wall. 738; U. S. v. Peck, 102 U. S. 64; U. S. v. Gibbons, 109 U. S. 200, 3 Sup. Ct. 117; Railway Co. v. Jurey, 4 Sup. Ct. 566. In Atkinson v. Sinnott, 67 Miss. 502, 7 South. 289 (see cases cited), the supreme court held "that it is competent to look to the surroundings of the parties, not to contradict, but to interpret, the meaning of the words they have employed."

It is not contended that warranties common to an insurance contract against fire losses could be set up or maintained under plaintiff's declaration. We do not know that $1,200 a year would be a fair or an excessively high charge for supplying plaintiff's shops with sufficient water for other uses than for fire purposes; nor are we advised as to how far $1,200 would go to secure a reasonable amount of insurance on such valuable property as was destroyed by the fire. The warranties in this contract do not suggest in favor of the plaintiff such absolute indemnity as might be contracted for in an insurance risk; yet an inquiry into such matters might have disclosed to us "the same light the parties possessed when the contract was made." The breach of the contract was not, as it would be in fire insurance contracts, in the fact that a fire destroyed the railway company's property; for if water with a much greater pressure had been thrown, through ample piping, by the most skillful firemen, it might not, or possibly could not, have been arrested. But the breach upon which the pleadings herein show this action to be

founded occurred when the defendant failed to furnish plaintiff's servants with an adequate supply of water, at not less than 60 pounds pressure, as contracted for; so that such servants might, with the use of water under that pressure, have done all that was practicable to save plaintiff's property. The defendant agreed to furnish that pressure of water, as the plaintiff alleges, for fire purposes; and plaintiff took on itself the risk as to the effectiveness or sufficiency of water at such a pressure to extinguish such fires as might threaten said company's buildings.

The plaintiff's buildings were destroyed by fire. Under the real facts in the case, the proximate cause of plaintiff's loss may have been the said fire, or the proximate cause may have inhered in, and sprung out of, defendant's failure to furnish water at 60 pounds pressure. On the other hand, the real facts in the case might have disclosed conditions under which defendant would not be chargeable for plaintiff's loss, even though the waterworks company had failed, in plaintiff's emergency, to supply any water at all. But the plaintiff had contracted for an adequate supply of water at such pressure, and, when the emergency came, the railway company was entitled, under a reasonable condition of things, to the use of water at that pressure, to aid its servants, to that extent, to extinguish the fire. Under the pleadings, plaintiff's evidence, not objectionable under the well-established rules as to the admissibility of evidence, applicable under such a state of case, might have authorized a recovery of damages. See Greenl. Ev. § 230; Tufts v. Greenewald, 66 Miss. 360, 6 South. 156; Dixon v. Cook, 47 Miss. 222. Plaintiff's declaration alleges that the proximate cause of its damages was not the fire, but was in the fact of defendant's failure to furnish water at 60 pounds pressure. If such be the case, plaintiff's damages were not remote or too consequential to be sustained by the law applicable to the facts. Hadley v. Baxendale, 9 Exch. 341; Suth. Dam. p. 80, cases cited; Hammer v. Schoenfelder, 47 Wis. 455, 2 N. W. 1129; 5 Am. & Eng. Enc. Law, pp. 5, 6, 13.

Under the rule in Hadley v. Baxendale, 9 Exch. 341, and quoted with approval by a number of federal and state courts, the court said:

"When two parties have made a contract which one of them has broken, the damages which the other ought to recover, in respect of such breach of contract, should be either such as may fairly and substantially be considered as arising naturally—i. e. is according to the usual course of things—from such a breach of contract itself, or such as may be supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of it."

Fogg v. Blair, 139 U. S. 122, 11 Sup. Ct. 476 ; 1 Sedg. Dam. pp. 66, 77; 5 Am. & Eng. Enc. Law, pp. 5, 13, 15.

It follows from what we have said that there was error in excluding the plaintiff's testimony, and directing a verdict for the defendant in the court below. Therefore, the judgment of the circuit court must be reversed, and the cause remanded, with directions to award a new trial and to take such proceedings as may be in accordance with this opinion.