[S. F. No. 5089.   In Bank.—January 16, 1911.]

## NIEHAUS BROTHERS COMPANY (A Corporation)', Repondent, v. CONTRA COSTA WATER COMPANY (A Corporation), Appellant.

WATER COMPANIES—PRIVILEGE TO CONSTRUCT FIRE HYDRANTS—USE ONLY IN EMERGENCY—OBLIGATION TO PROTECT AGAINST FIRE NOT IMPOSED.—A privilege by a former water company to plaintiff's predecessor, as the owner of property, to erect fire hydrants, at its own expense, to be connected with the mains, but not to be used except in case of fire in its building and to pay "such an amount as will be agreed on by the parties," without any other definite agreement between the parties, imposed no obligation upon said water company to furnish sufficient water for protection against fire, or to pay for any loss of the building by fire. It is held that no succeeding water company assumed any such obligation, or made any express or special contract with the plaintiff for protection against loss by fire.

ID.—CHARGE OF FLAT RATES PER MONTH—SPECIAL CONTRACT FOR PROTECTION NOT SHOWN.—The charge of a flat rate for each month for all water used for domestic purposes or in the hydrants, instead of the rates fixed by a city ordinance, does not show a special contract for protection against loss by fire.

ID.—CHANGE TO CITY RATES—CHARGE FOR WATER USED AND FOR HYDRANTS—REFUSAL TO PAY BILLS—STATEMENTS BY AGENT—OPINION—CONTRACT NOT MADE.—Where the flat rates were changed to a charge for water used and for hydrants, fixed by a city ordinance,

CLIX Cal.—20

and the plaintiff refused to pay the same, statements made by a subordinate agent, urging him to pay the bills, expressing his opinion concerning the advantage of the hydrants for protection against fire, do not establish a special contract for such protection, even if authorized.

ID.—RIGHT OF RECOVERY FOR LOSS BY FIRE—EXPRESS CONTRACT FOR PROTECTION ESSENTIAL.—Where a right of recovery for loss by fire is asserted by the plaintiff against the defendant water company, it is essential to such right that it be based upon an express contract by defendant to protect plaintiff against loss by fire. No such right is given by the constitution or any law of this state.

ID.—IMPLIED CONTRACT FOR PROTECTION NOT INFERABLE FROM RELATION BETWEEN WATER COMPANY AND CONSUMER.—No implied contract for protection against loss by fire is to be inferred from the ordinary relation between a public distributor of water and the consumer.

ID.—EFFECT OF CITY ORDINANCE—HYDRANT RATES—OBLIGATION OF WATER COMPANY.—The city ordinance fixing water rates was passed in pursuance of the constitutional requirements, and its rates are based upon water as a commodity for public use. The provision therein fixing fifty cents as a monthly rate on each hydrant, presupposes that the hydrants have been constructed by the consumer. The only relation of the water company to these charges is that it must furnish water available thereto at the fixed ordinance charges; but such charges impose no obligation upon the water company. to have constantly on hand a supply of water for fire protection. They are not fixed as a consideration for such obligation.

ID.—BASIS OF NECESSITY FOR EXPRESS CONTRACT FOR FIRE PROTECTION.— It is from the fact that, under the ordinary relation of public service corporation and consumer, the only duty of the company is to furnish water as a commodity and not for the purpose of extinguishing fires, that liability for damages for failure to supply it for that purpose can only be based upon express contract.

ID.—LIABILITY UPON EXPRESS CONTRACT.—Where a person desires water to be supplied to his property for special protection against fire, the water company may make a contract to supply it for that purpose, and under such a contract, will be responsible in damages for any loss suffered by fire and directly attributable to the failure of the company to fulfill its contract.

ID.—FINDINGS AGAINST EVIDENCE—ACTION NOT MAINTAINABLE.—It is held that the findings of the court in the present action to recover damages for an alleged breach of a contract to supply water to plaintiff's premises, through which his mill was destroyed by fire, that there was a contract for the supply of such water for protection against fire between plaintiff and defendant, which was broken, are against the evidence, and that as no such contract was proved, the plaintiff was not entitled to maintain the action.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Page, McCutchen & Knight, and M. C. Chapman, for Appellant.

Goodfellow & Eells, and Goodfellow, Eells & Orrick, for Respondent.

LORIGAN, J.—This action was brought to recover damages for an alleged breach of contract to supply water to the premises of plaintiff for fire protection through which failure its mill was destroyed. Plaintiff had judgment for $128,645.42 and defendant appeals therefrom, and from an order denying its motion for new trial.

On August 15, 1901, plaintiff, the owner of a planing mill in that portion of Berkeley, known as "West Berkeley," had upon its premises seven hydrants installed thereon for fire purposes by its predecessors, at their own expense, many years before. When said hydrants were so established, the predecessor of plaintiff—the Alameda Water Company—then owning the water system subsequently acquired by defendant, connected its street mains with service-pipes on the premises of plaintiff for the purpose of furnishing a supply of water to the mill for general purposes, such service-pipes also leading to these hydrants. These service-pipes were two inches in size and attached to each hydrant was a hose one hundred feet long with a one-half inch nozzle. The water supply from the street main to six of these hydrants passed through valves situated close to the water meter, by means of any of which valves the water could at pleasure be turned on or off at a hydrant. The seventh hydrant was connected with the street main by a separate service-pipe and its water supply did not pass through the meter.

While the Alameda Water Company so owned the water system, the plaintiff, under an arrangement made with that company, was paying it for a supply of water to its premises, including the supply to the hydrants, a flat rate of practically

five dollars a month. The Alameda Water Company subsequently sold its water system to the East Shore Water Company, which in turn disposed of it to the defendant, the Contra Costa Water Company, two months prior to August 15, 1901. On this latter date the mill of plaintiff caught on fire and was with its contents destroyed, such destruction occurring, it was claimed by plaintiff, and the court so found, from the failure of the defendant to have any water supply in its mains available at the hydrants on the premises of plaintiff to prevent the loss.

Plaintiff, as the basis of its action against defendant, alleged in the complaint that at the time of the fire and long prior thereto a contract subsisted between defendant and plaintiff whereby the latter for a valuable consideration "undertook to furnish to the plaintiff by means of its said reservoirs and mains and the said hydrants, protection against loss or damage to said premises and property by fire; and in that behalf to keep constantly available to the plaintiff for use upon its said premises in case of fire thereon, water from its said reservoirs and through its said mains sufficient for the use of the said hydrants in the manner aforesaid, and their application to the extinguishment of such fire."

The court, following practically the language of the allegation in the complaint, found that such a contract subsisted. It further found that the defendant was furnishing water to the town of Berkeley and certain of its inhabitants as a *quasi* public corporation; that by an ordinance in force in said town the rates to be charged by and paid to defendant were fixed by the municipal authorities; that the rate fixed for each fire hydrant was fifty cents a month, and that defendant had been collecting and receiving from said plaintiff as a consideration for supplying water for extinguishing fire upon its premises by the use of such hydrants the said sum of fifty cents a month for each of said hydrants, whether or not there was or had been occasion to use the same, or whether or not any water had been taken or consumed thereby.

The court made various additional findings, among others that the failure to supply water to the hydrants was through the negligence of the defendant, and that had water been available at the hydrants on the premises of plaintiff when the fire was first discovered, it could have been extinguished.

Though not expressly found by the court, it is conceded that in addition to fixing the ordinance rates for each hydrant at fifty cents per month, the ordinance further fixed the rate for furnishing water to consumers at thirty-five cents per one thousand gallons.

While the appellant attacks all the principal findings made, and assigns various errors in the rulings of the court in admitting evidence, the principal discussion on both sides on this appeal is addressed: 1. To the point whether there was any evidence to sustain the finding of the court that there was an express or private contract between the parties to the action whereby defendant obligated itself to furnish water to plaintiff's premises for the extinguishment of fires; and 2. If there was no such contract, was the defendant water company liable for the loss of the buildings of the plaintiff occasioned through the negligent failure of the company to have water available at the hydrants on the premises where the only relation between the parties was the usual relation which exists between a company engaged in the sale and distribution of water for public use to consumers and a consumer.

We deem these the controlling questions in the case and proceed to their consideration.

First, treating the finding of the court as being to the effect that there was an express contract existing between defendant and plaintiff for a supply of water to the premises of the latter for fire protection. Such a contract was sought to be shown by plaintiff. Its claim in this regard was that it had made a contract with the predecessor of defendant, the Alameda Water Company, to furnish water for such protection, and that such contract had been assumed by defendant when it took over the water plant. The only specific contract with the Alameda Water Company which was offered showed that in 1889 a privilege was granted to the predecessor of plaintiff to erect on its premises a "hydrant or fire plug to be supplied by water from the mains of the Alameda Water Company," the plaintiff agreeing not to use any water therefrom, except for the extinguishment of fire which might break out in the building, and to pay "such an amount as will be agreed on by the parties." This is the only agreement shown to have been made with the Alameda Water Company which is relied on as an express contract to furnish water for protection against fire,

and it is quite evident that there is nothing in this contract whereby the Alameda Water Company obligated itself to furnish water for any such purpose.   In fact we do not now understand counsel for respondent to particularly insist that any such arrangement was shown under this contract to have been entered into.   But if it was, it affirmatively appears from the evidence that neither the East Shore Water Company nor the defendant ever assumed this contract when they respectively took over the plant of the Alameda Water Company.

It is further claimed, however, by plaintiff that if no express contract existed between the Alameda Water Company and plaintiff for the supply of water for fire protection and assumed by defendant, still there was a special contract between plaintiff and defendant for such protection.

In that respect it appears, that for some months after the defendant acquired the water system it continued to charge plaintiff for the water supply furnished it, the same flat rate of five dollars a month which plaintiff had been paying the Alameda Water Company.   In April, 1901, however, defendant notified plaintiff that such arrangement would be discontinued and ordinance rates as established by the town of Berkeley for water furnished it would be charged.   As we have said, the agreement with the Alameda Water Company for the payment of a flat rate by plaintiff was not a contract for fire protection; neither was it a fixed contract rate even for a supply of water for general purposes, and there was therefore nothing which prevented the defendant from changing such rate when it saw fit and requiring the payment of ordinance rates.   So commencing on May, 1901, and thereafter up to the fire, defendant presented its monthly bills to the plaintiff at ordinance rates for water used, with an additional charge of fifty cents a month at ordinance rates for each hydrant.   Plaintiff refused to pay these latter bills either for water or hydrants, contending that it was only required to pay at the flat rate previously prevailing, or, at most, if the water consumed by it for any month exceeded that amount, based on the ordinance rates, then for the excess used at such rates.   It absolutely refused to pay the hydrant charges, and after May, 1901, when the first bill at ordinance rates was presented, paid no water rates at all, either for water consumed or hydrants, and had not done so up to the time the fire

occurred. After the presentation to the plaintiff of the first water bill, which included charges for the hydrants, and the refusal of plaintiff to pay defendant, the agent of the defendant wrote to plaintiff insisting that the company was only charging it rates fixed by the municipal ordinance of Berkeley for water supplied plaintiff and the ordinance charges for hydrants, and in an endeavor to have plaintiff pay the bills, expatiated upon the advantage plaintiff was deriving from having its hydrants connected with the water system of defendant by a large service-pipe and the protection against fire it was deriving therefrom. A similar statement was made in a letter written by the agent in April notifying plaintiff of the intention of the company to abandon the flat rate and thereafter charge the ordinance rates for water and hydrants. These letters are relied on as constituting a special contract for fire protection. But aside from the fact, clearly established, that the agent writing these letters had no authority to make arrangements with consumers except for ordinary water supply purposes, the manager of the company alone being authorized to make contracts for fire protection or other special purposes, these letters themselves if the agent had power to make a contract for fire protection would not constitute such a contract. These letters had reference to existing conditions between the parties and whatever the agent wrote was but an expression of his opinion as to the advantage the plaintiff was deriving by having hydrants connected, through large service-pipes (as he stated), with the street mains of defendant, and his purpose was to prevail on plaintiff to pay the bills presented on the ordinance basis. The correspondence was not with a view to making any contract for fire protection, nor is it capable of being construed as evidencing the fact (nowhere pretended to be otherwise established) that any special contract for fire protection ever existed.

It being determined, therefore, that there was no contract entered into between the parties whereby the water company obligated itself expressly or specially to furnish water constantly available at the hydrants on the premises of plaintiff for the extinguishment of fires, the question for further consideration is did such an obligation arise from the only relation shown to have existed between the parties,—namely, that of a public water company connecting its water system with the

service-pipes of the mill premises of plaintiff with which service-pipes the plaintiff had connected its hydrants, the company collecting the ordinance rates for water and hydrants established by the town of Berkeley.

In considering this question we attach no particular importance to the fact that plaintiff refused to pay the monthly charges made by defendant either for water or hydrant rates. These charges were in dispute. The defendant had not disconnected its service and the plaintiff continued to avail itself of the benefit thereof for all purposes and was therefore liable to pay the ordinance rates. So for present purposes it may be assumed that whatever the liability of defendant would have been had the charge been paid such liability continued to exist at the time of the fire, notwithstanding that the charges had not been paid.

The position of respondent with respect to the liability of defendant is that it was not necessary to show any express or special contract between the parties for fire protection; that from the fact that plaintiff had installed hydrants on its premises for use should a fire occur and defendant had connected its water system therewith and charged the ordinance rates for water and for the hydrants, a contractual relation was thereby assumed by defendant to have constantly on hand, or at least to exercise ordinary care to have, a sufficient supply of water available at the hydrants to extinguish any fire which might arise on the premises with a corresponding liability for any loss occurring as a direct result of its failure to do so.

Before proceeding to a discussion of this claim, it is to be noted that respondent bases its right of recovery solely on contract—a contract which it asserts existed by reason of the relation between the parties. Necessarily its right to recover must be supported by contract because there is nothing in the constitutional provisions of this state impressing the distribution of appropriated water with a public use (Const., art. XIV), or in the legislation thereunder, (Stats. 1881, p. 54), which imposes upon a water company any obligation to furnish to the municipality, or its inhabitants, any specified quantity of water, or water for any particular purpose. Hence, no action in tort for failure to have a supply of water at the premises of a consumer in a city or town for the extinguishment of fire, or for any other purpose, is given under any statute or

rule of law in this state, and, hence, where liability is sought to be created it can only arise from a private contract between the company and a consumer, under which an obligation to furnish water for a specific purpose is undertaken by the company. (*Ukiah* v. *Ukiah Water & Imp. Co.,* 142 Cal. 175, [100 Am. St. Rep. 107, 64 L. R. A. 231, 75 Pac. 773].)

It is true that the trial court found that the failure to have a supply of water available at the hydrants on the night of the fire was occasioned through the negligence of the defendant, but the plaintiff expressly disclaims any right to recover on that fact as disclosing a neglect of any public duty which defendant owed to plaintiff. While it is claimed that under the express or special contract primarily asserted there was an unconditional liability for failure to have water at the hydrants, proof of negligence was given solely for the purpose of showing that if, under the implied contract between the parties, defendant was only bound to use ordinary care to have a water supply available, it negligently failed to have it.

While the fact that defendant was furnishing water to be used at plaintiff's mill and available at its hydrants did not create any other relation than the ordinary contractual relation that exists in any case where a water company is supplying water to a consumer under an imposed legal duty to do so at municipally fixed rates and for such purposes as a consumer may require, the respondent, nevertheless, claims that this ordinary relation of public distributor of water and consumer was sufficient to impose upon the defendant the obligation to supply it for fire protection and relies on the cases of *Hunt Brothers* v. *San Lorenzo Water Co.,* 150 Cal. 51, [7 L. R. A. (N. S.) 913, 87 Pac. 1093]; and *Ukiah* v. *Ukiah Water & Imp. Co.,* 142 Cal. 175, [100 Am. St. Rep. 107, 64 L. R. A. 231, 75 Pac. 773], as authority in this state to that effect. But these cases do not support any such claim. In the Hunt Brothers' case the extent of the liability of a water company springing from the ordinary relation of distributor and consumer was not involved. The contract between the parties in that case was an express one, whereby for a stipulated consideration the water company agreed to install a hydrant on the premises of the plaintiff, connect the same with its mains, and by means thereof supply the premises of the plaintiff with water for the express purpose of extinguish-

ing any fire that might occur on the premises.    In the Ukiah case the only question involved was whether under a contract between the water company and the city of Ukiah to furnish water to the public hydrants at ordinance rates for general fire purposes, the company was liable for the destruction of property owned by the municipality itself, the company at the time of the fire negligently failing to have water at the public hydrants.    It was held that under such a contract the company was not liable.    It is true that in both cases referred to, the court, in the discussion of the questions presented, stated that the relation between a public water company and a consumer was of a contractual nature.    But the court was only defining that relation in a general way and as far as it was involved in those cases.

In the Ukiah case, where the question as to what was the relation between a water company and a consumer was more particularly under consideration, the court held such relation to be contractual; that when the company on demand of the property-owner connected its system with his premises a contractual relation was established, the company to furnish water and use all reasonable efforts to continue doing so, the consumer to pay the established rates.    But there the court was defining simply the ordinary contractual relationship existing between them; an implied contract resulting from the duty of the water company to supply water, and the obligation of the consumer to pay for it.    It was not held, or even intimated, that when a water company undertakes to supply water to a consumer for general purposes, but which, through the medium of hydrants voluntarily installed by him upon his premises he may desire to avail himself of to extinguish fire, that the company thereby impliedly obligated itself to have constantly or at all on hand a supply of water sufficient for such fire protection, and for a failure to have it when needed, is responsible for any loss directly occasioned through such failure.    On the contrary (although the precise question here presented was not there directly involved, nor in fact heretofore presented in this state), the rationale of the whole opinion in the Ukiah case negatives the idea that from such ordinary contractual relation a public water company assumes any such obligation.    It is, in effect, held that such an obligation is not implied from such relation

merely, and can only exist where, in addition to the ordinary duty of supplying water for general use, the company by express contract assumes the additional obligation of furnishing it in sufficient quantity to protect specific property from fire. In that case, while the court in discussing the only question involved,—namely, whether a contract with the water company for the supplying of water to public hydrants of a municipality for general fire protection gave a right of action for the destruction of specific municipal property,—denied the liability of the company on the ground that there was no direct contract between it and the city for the protection of such specific property, the general tenor of the opinion is to the effect that no liability for failure to furnish water for fire protection arises from the ordinary relation of water distributor and consumer and can only be created under an express contact between the parties, whereby the water company agrees to furnish water as a protection against fire.

This is apparent further from the discussion in the opinion there of the cases relied on by appellant in that case,—namely, *Paducah Lumber Co.* v. *Paducah Water Supply Co.*, 89 Ky. 340, [25 Am. St. Rep. 536, 12 S. W. 554, 13 S. W. 249, 7 L. R. A. 77]; *Gorrill* v. *Water Supply Co.*, 124 N. C. 328, [70 Am. St. Rep. 598, 32 S. E. 720, 46 L. R. A. 513], and *Planters Oil Mill* v. *Monroe Water Works,* 52 La. Ann. 1243, [27 South. 684]. While, as a general rule, under a contract between a water company and a municipality to furnish water for the protection of property within the municipality against fire, a private property-owner is denied any right of action against the company on the ground that under such an agreement there is no privity of contract between the company and the property-owner, these actions were brought against private water companies by citizens whose property had been destroyed by fire by reason of the negligence of the water companies, under contracts with the cities to supply water for fire protection to the inhabitants thereof, and the right of the property-owners to recover sustained. It was insisted that these cases supported the right of the city of Ukiah, under its contract with the water company for general fire protection, to recover for the loss of its particular municipal property which had been destroyed. It was pointed out, however, that in the cases relied on the courts deciding them did not

consider that they came under the general rule above stated because in each of these cases the water company in its contract with the city expressly contracted to furnish fire protection to the property of the inhabitants thereof, and that the distinction between those cases and the case of the city of Ukiah was, that as to the latter there was no express covenant in the contract between it and the water company for security by way of fire protection to any city property owned by it. In all those cases the liability was not sought to be imposed or sustained on any implied contract springing from the ordinary relation of a public water company and its consumers, but upon a contract whereby private water companies for particular concessions and privileges extended them by the cities had expressly agreed to furnish water for protection against fire, and they were held liable for a failure to give what they had expressly obligated themselves to furnish.

Assuming, however, that the Ukiah case may not be taken as authority denying the liability of the water company under the facts shown in the present case, we are satisfied (and little is presented on either side in adjudicated cases directly bearing on the question) that on principle no such liability is implied merely from such relation of distributor of water and consumer, and that such liability can only be created by an express contract between the parties.

When we take into consideration the *status* of water companies in this state, the nature of the business in which they are engaged, the constitutional control which the state, through its municipalities takes in fixing the rates which may be charged for water, and the law imposed duties which the companies must discharge to their customers, no liability such as plaintiff claims was ever contemplated where the only relation shown is such as proceeds from the fact that the water company has undertaken to furnish the inhabitants of a municipality with water, has connected its mains with the premises of a consumer, and is charging ordinance rates for the water supplied or to be supplied.

Under the constitution of this state a corporation which has appropriated water for sale and distribution to customers is in the exercise of a public use, and by constitutional mandate the compensation or rates which may be charged in the business of exercising that use must be fixed by the municipality

in which it is furnished. In harmony with this constitutional requirement the town of Berkeley fixed the rates to be charged by the defendant to the inhabitants therein, which embraced a charge of thirty-five cents per thousand gallons for water and a charge of fifty cents per month for hydrants where hydrants were installed. As a public-service corporation the defendant was under legal obligation to furnish water to any of the inhabitants of the municipality should they desire it and would pay the established rates. The plaintiff had a right to install its hydrants on its premises and require the defendant to connect its system with the service-pipes of plaintiff so that water might be used at such hydrants. But so had every other property-owner in the municipality. It was a right which all might exercise. The company had no voice in the matter of installing hydrants or connecting its mains with the service-pipes thereon; that was a matter of volition for the owners of the premises. The only relation the company had to these hydrants was that it must furnish water available thereto at the fixed ordinance charges.

This being the legal situation as respects the water company, both with reference to the restriction on its power to charge rates and its choice of supplying its consumers, it would appear that in the nature of the situation itself no obligation, implied or otherwise, to have constantly on hand a supply of water for fire protection could arise.

While it is to be presumed that the rates established by a municipal ordinance are fair and reasonable, this presumption only applies as far as such rates fix the compensation to be paid the company for furnishing water to consumers as a commodity. They are not fixed as a consideration under which the company obligates itself to furnish water for the extinguishment of fires with a corresponding liability for failure to do so. And it is from the fact that under the ordinary relation of public-service corporation and consumer that the only duty of the company is to furnish water as a commodity and not for the purpose of extinguishing fires that liability for damages for failure to supply it for the latter purpose can only be created by express contract. The weight of authority is to the effect that a property-owner has no right of action against a water company under its contract with a city to supply water to public hydrants for the protection of his

property, although his loss may have been occasioned through the negligent failure of the company to have on hand a supply whereby the loss might have been prevented. The authorities deny the liability on the ground that there is no privity of contract between property-owners and the water company. In commenting on the rule of these authorities in 1 Farnham on Water and Water-Rights, the author says (pages 848-851): "The difficulty is that these decisions, although correct in their result, are all placed on the wrong principle. The non-liability of the water company depends, not on the inability of the taxpayer to maintain the action, but on the failure of the water company's contract to cover the liability sued for. As said in *Wainwright* v. *Queens County Water Co.,* 78 Hun, 146, [28 N. Y. Supp. 987], the company does not agree to extinguish fires. Its agreement is to furnish water. . . . Keeping in mind the fact that the contract of the water company is to furnish water and not to extinguish the fire, the rule with respect to damages precludes holding the company liable. Damages must be such as were in the contemplation of the parties; and it certainly cannot be claimed that for the meager remuneration received a water company undertakes to make good the loss which would result from the destruction of a modern city by fire. And the principle applies equally to the destruction of any part of it. For there is no place to draw a line short of absolute non-liability if liability for loss of the entire city is denied. The great weight of authority agrees with this conclusion, although the decisions are not placed on this ground. . . . If the company directly contracts with the consumer to furnish a supply adequate for fire purposes, it may be regarded as having assumed liability for loss by fire if the loss can be shown to have been the result of its breach of contract."

Applying the reasoning of these authorities to the relation between the company and the consumer here, it is apparent that from that relation no obligation to furnish water for fire protection is implied, nor can it be said to exist in the absence of an express contract. Keeping in mind, as suggested by the authorities just referred to, that the primary business of a water company is to furnish water as a commodity, and not to extinguish fires, and further recognizing that under the law of this state the defendant is a *quasi* public corporation

engaged in the exercise of a public use and discharging a
public duty which would otherwise devolve upon the munici-
pality itself and furnishing water at rates fixed exclusively
by the municipality, it would appear plain that it was never
contemplated that from the simple relation of distributor
and consumer the former undertook to assume liability for
failure to furnish water to extinguish fires. In the nature of
things the compensation fixed by the municipality has no rela-
tion to the assumption of any such liability; that compensa-
tion is based on the expense of furnishing water simply as a
commodity; liability for destruction of premises to which the
company may be required to supply water was not taken into
consideration in fixing the rates, nor, we apprehend, was it
even thought that any such liability could be imposed by the
ordinance, or was to be assumed by the company in doing so.
This is apparent on reflection. As we have said, the defendant
is a public-service corporation, and under a duty enjoined on
it by law, was obligated to make connection with their premises
and furnish water to any of the inhabitants of the municipality
who desired it. And as further said, no one person had a
right superior to another to demand that he should be sup-
plied, and the legal duty was imposed upon the company to
furnish it equally to the extent that its system was capable
of doing it. The plaintiff had a right to install its hydrants,
as had any other member of the municipality, and to require
the water company to connect its mains with the service-pipes
supplying such hydrants, and for this service the company
could only require the payment of the water rates and hydrant
charges fixed by the ordinance of the municipality.

It would not seriously be contended where property-owners
have installed hydrants, standpipes, or such other facilities,
upon their property as might be available to them to extin-
guish fire, that a water company furnishing water to the
premises from connections made therewith, and at ordinary
ordinance rates for water, would be liable for a loss by fire
occasioned either through a deficiency or total failure of water
at the time it occurred. Such a liability could not be forced
upon the company by the action alone of the consumer instal-
ling these facilities. A fire in its incipiency might be extin-
guished by a garden hose, but it would not be claimed that a
failure of the company to have water available for that pur-

320 Niehaus Bros. Co. *v.* Contra Costa etc. Co. [159 Cal.

pose by means of a hose would entail liability upon it for the destruction of the consumer's premises by fire. Non-liability under such circumstances must be conceded.

The particular stress, however, of respondent's claim of liability of defendant is based on the fact that the company charged the monthly ordinance rates for the hydrants installed upon plaintiff's premises. But these were not paid by reason of any contract between it and the, defendant. If a voluntary contract had been made between them under which a stipulated monthly sum was charged plaintiff by defendant for connecting its mains with the hydrants of the plaintiff, it might reasonably and plausibly be argued that fire protection was contemplated as the only advantage to be derived therefrom. Here, however, there was no such contract. While the municipality has the constitutional power to fix the rates at which a water company may supply water to its inhabitants, this applies only to the establishment of rates for the supply of water as a commodity, and while it may contract with the company for general protection against fire of the property of its inhabitants and expressly contract for protection of its own municipal property, it has no authority to arbitrarily impose upon a water company liability for the destruction of the property of the individual citizen on account of an inadequate water supply by simply fixing an ordinance rate for hydrants which the citizen may install upon his premises. This must be apparent, if for no other reason than that it is not only not the business of a municipality to contract for the benefit of particular individuals of the community as to fire protection, but it would be impossible for the municipality to establish rates which would adequately meet the varied risks which the company might be required to assume.

That no liability for failure to furnish fire protection could have been contemplated from the establishment of these hydrant rates is obvious  The property-owner installing a hydrant available for the protection of property owned by him of the value of a few thousand dollars would pay the same rate under the ordinance for water and hydrant charges as would the owner of property worth hundreds of thousands of dollars, so that it cannot for a moment be claimed that these hydrant rates had any relation to the risk which it is

claimed the water company assumed, or that they formed any adequate consideration for the assumption of such a risk or liability, or that they represented anything except a reasonable compensation for water available thereat as a commodity or as merchandise.   And that it was not contemplated that any such liability should arise from the mere relation of water company to consumer is more apparent when we consider the enormous liability which the company would be compelled to assume under the theory of respondent without any adequate, and it may be said, any consideration at all, for the hazard.   It is common knowledge that, notably in large manufacturing centers within municipalities, hydrants are installed on the premises and connected with a public water company's system as a precautionary measure in case of fire.   This is particularly true when the enterprise in which the owners are engaged is more readily exposed to danger from fire, either from the inflammable material which is being used in the factories, or on account of the proximity of others which are of that character. The various factories or mills in which hydrants are placed and connections with the public water system made may represent property worth millions of dollars which is subject to danger of destruction by fire and where the water to be used should fire arise is not furnished under any express contract between the parties but is being supplied simply under the ordinance rates as to water and hydrant charges established by law.   Of course, if the position of the respondent is correct, then in all these instances a public water company is assuming liability practically as an insurer of millions of dollars worth of property upon which, either from the nature of the business conducted on the premises or the locality in which the property is situated, an insurance company itself would not think of assuming the risk.

We have no doubt that although the primary duty of a water company, as a *quasi* public corporation, is to furnish water to the inhabitants of a municipality for domestic purposes, still where a person desires water to be supplied to his property for special protection against fire, and in addition to the general protection which is given it under the contract between the municipality and the water company, that this being a service of a different character than ordinarily ob-

tains, and entailing an unusual risk, the water company may make a contract to supply it for that purpose, and under such a contract will be responsible in damages for any loss suffered by fire and directly attributable to the failure of the company to fulfill its contract. (*Middlesex Water Co.* v. *Knappan-Whiting Co.,* 64 N. J. L. 240, [81 Am. St. Rep. 467, 45 Atl. 692, 49 L. R. A. 572]; *New Orleans etc., R. Co.* v. *Meridian W. W. Co.,* 72 Fed. 227, [18 C. C. A. 519].)

Under such circumstances there can be no room to question the liability of the water company. The parties contract freely and with the express purpose of having fire protection. Such protection is the very thing in the contemplation of the parties.

As said in *Gordon* v. *Doran et al.,* 100 Minn. 343, [111 N. W. 272, 8 L. R. A. (N. S.) 1047]: "So long as water supplied for protection against fire is a purely public service, under the control and management of municipal authorities generally . . . no direct charge to individuals is proper. When, however, a sprinkling connection is made with private premises, the situation is materially different. These premises . . . are primarily under the control, not of the public, but of the owner. A peculiar personal service is provided for his benefit, which is not enjoyed in common by the community in general, but is available only to a limited class of individuals. . . . As a matter of good sense the property-owner beneficially employs the water mains for his own purposes and to his own advantage, although he may not, except in case of fire, actually draw any water from the pipes. It is necessary and proper that for this he should pay. In effect he gets something of pecuniary value from another, which that other is not compelled to give except on the basis of contract."

Our conclusion therefore is that the only relation shown to exist between the defendant and the plaintiff was that of a water company engaged in distributing water for public use to a consumer who had availed himself of his legal right to have the company connect its water system with his premises for the purposes of furnishing him with water solely at ordinance rates fixed by the town of Berkeley; that under such relation no liability is imposed by any statute of this state upon such public-service company for failure, from whatever cause, to have a supply of water available on the premises

of the consumer for use in fire protection, although he may have installed ample facilities for that purpose, and no legal liability for such failure, independent of the statute, is implied from the relation; that such liability can only be created by contract between the parties under which the water company expressly assumes the liability. As no such contract was proven here, the plaintiff was not entitled to maintain this action.

The judgment and order appealed from are reversed.

Angelotti, J., Shaw, J., Henshaw, J., and Sloss, J., concurred.

Rehearing denied.