[S. F. No. 2830.   Department Two.—February 10, 1904.]

## TOWN OF UKIAH CITY, Appellant, v. UKIAH WATER AND IMPROVEMENT COMPANY, Respondent.

WATER COMPANY—CONTRACT TO FURNISH WATER SUPPLY—GENERAL FIRE PURPOSES—NEGLIGENCE—LOSS OF CITY PROPERTY.—Where the contract with a water company to furnish water for the extinguishment of fires through fire-hydrants connected with its main was entered into by a town merely for *general* fire purposes, for the benefit of all its inhabitants, and no protection of any specific property was contemplated, the town stands in the same relation to loss of its property by fire as any other property-owner, and it has no right of action for loss of its property by fire for neglect of the water company to furnish a water supply under sufficient pressure at the time of the loss.

APPEAL from an order of the Superior Court of Mendocino County granting a new trial.   F. M. Angellotti, Judge presiding.

The facts are stated in the opinion of the court.

Seawell & Pemberton, and J. C. Ruddock, for Appellant.

The town stands in privity of contract with the water company, and cannot be held to have the same relation to the contract as a citizen who was not privy thereto.   (*Gorrell* v. *Greensboro Water Supply Co.*, 124 N. C. 328;[1] *Lenzen* v. *City of New Bramfels*, 13 Tex. Civ. App. 335; *Paducah Lumber*

---

[1] 70 Am. St. Rep. 598.

*Co.* v. *Paducah Water Supply Co.,* 89 Ky. 340; *Duncan* v. *Owensboro Water Co.,* 12 Ky. Law Rep. 35; 12 S. W. 551; *Planter's Oil Mill* v. *Monroe Waterworks Co.,* 52 La. Ann. 1243.)

McGarvey & Bledsoe, for Respondent.

The defendant owed no duty independent of contract. (*Britton* v. *Green Bay Water Co.,* 81 Wis. 48;[1] *Fowler* v. *Athens City Water Works,* 83 Ga. 219;[2] *Foster* v. *Lookout Water Co.,* 3 Lea, 42.)   It was not liable to the city under the implied contract shown.

HENSHAW, J.—This action was instituted by the town of Ukiah City to recover damages against the defendant water company for the destruction of plaintiff's property by fire, the liability of defendant being predicated upon its negligence, and upon the breach of its contract with the plaintiff for supplying water in its supply-pipes and fire-hydrants under sufficient pressure for effective use.   A general demurrer was interposed to the complaint and overruled.   The defendant answered, and trial was had resulting in a verdict of the jury, under the instructions of the court, in favor of the plaintiff.   The defendant moved for a new trial, which motion was granted, and plaintiff appeals from this order.

The learned judge of the trial court expressed his views upon granting the motion for a new trial, in the following language:—

"The case presents the novel question as to the extent of liability on the part of one engaged in the business of furnishing water appropriated for sale, rental, and distribution to a municipality, to which it has undertaken for a consideration to furnish water for the extinguishment of fires within the municipal limits, the property of which has been destroyed by fire by reason of the failure of such person to furnish water under a sufficient pressure at the time of the breaking out of the fire, such failure being due to negligence on the part of such person.

"It cannot be seriously disputed that the evidence adduced on the trial of this case warranted the jury in finding the

[1] 29 Am. St. Rep. 856.          [2] 20 Am. St. Rep. 313.

facts to be as embodied in the above proposition, at least as to a portion of the property destroyed by fire.

"It appeared that defendant corporation was at the time of the fire, July 16, 1899, and for more than six years immediately preceding that time, engaged in the town of Ukiah City in the carrying on of the business or employment for which it was incorporated,—viz., the maintenance and operating of waterworks in said town, and the furnishing to said town and its inhabitants of pure fresh water for all purposes.

"It further appeared that at the time the defendant commenced business hydrants for fire purposes were connected with its mains and pipes at various places in the streets of said town, in such a manner that there was no way to shut water out of the hydrants except by shutting off the main;

"That these hydrants, which, according to the testimony of witness Smith, were owned by plaintiff, have ever since been maintained and used by the town almost solely for the extinguishment of fires, and that in each of the ordinances passed from year to year by the trustees of plaintiff fixing the rates to be charged for water furnished the town and its inhabitants, a provision has been made for fire hydrants, the ordinance in force in July, 1899, providing among other charges against the town for water for municipal purposes, 'For fire-hydrants each per month, $1.00';

"That, for the whole time, defendant has at regular intervals presented its bills against plaintiff for water furnished, and has always included in said bills a charge for the hydrants connected with its pipes, at the rate fixed by the ordinance in force, the bill rendered for the period covering the fire charging for thirty-six hydrants, from June 1st to September 1st, at one dollar per month, and that all of these bills have been paid by plaintiff.

"The foregoing is substantially the only evidence as to a contract.

"In ruling upon the demurrer to the complaint, I stated that I had not been referred to, nor did I know of, any statute or rule of law that would, independent of contract, make the defendant liable on the facts stated in the complaint; in other words, that the mere fact that a corporation was engaged in the business of furnishing water appropriated for sale, rental, and distribution would not place upon it the obligation of

having constantly on hand a sufficient quantity of water available for use by the town for the extinguishment of fires, for the failure to observe which it would be liable to the municipality for the value of municipal property destroyed by reason of such failure.

"Further thought has satisfied me that there can be no question as to the correctness of these views; that something additional is essential to the creation of such a liability; and that if there be any such liability here, it must arise from contract.

"A contract for the furnishing water to the plaintiff town by defendant for the purpose of extinguishing fires in said town is, however, alleged in the complaint.

"I am unable to concur in the views of learned counsel for defendant that no contractual relation is shown by the evidence.

"It is true that no written contract covering the time of the fire is shown, but no particular form is prescribed by the statute for such contracts, and the evidence forces the conclusion that, at the time of the fire, the same relations existed between the town and the defendant as to the furnishing of water for *general* fire purposes, as ordinarily exist between the private consumer and the water company, as to water for domestic purposes.

"Where a private property-owner demands of a water company that it connect its system with his residence, and tenders the rate prescribed by the town ordinance for the water to be supplied, and the company complies with his demand, as it is required by law to do, it can hardly be denied that a contractual relation is established between the parties, the company, on its part, undertaking to furnish water to the consumer so long as he may desire it and pays the established rates therefor, or at least to use all reasonable efforts to furnish it, for I hardly think that the company would be held bound, in the absence of an express undertaking, to do more than to exercise ordinary care in the management of its business.

"Doubtless, too, a water company is required, upon proper demand by the municipality, to furnish water to the municipality for the extinguishment of fires that may arise therein, at the established rates, and when, in pursuance of such re-

quirement, it undertakes the service, a contractual relation is established, and the company is bound to continue the service it has undertaken.

"No formal written contract seems to be required by our statute to establish this relationship between the municipality and the company.

"That the plaintiff town, through its board of trustees, required this service for general fire purposes on the part of defendant, and that defendant undertook the same, and was actually employed therein at the time of the fire, is, in my judgment, fully shown by the evidence.

"If this be so, it was incumbent on the defendant, in order to fully perform its undertaking, to use ordinary care to have a supply of water adequate for the extinguishment of fires that might arise in the town constantly available at the various hydrants.

"Whether or not such obligation on the part of the company would carry with it any liability for the value of municipal property destroyed by fire, by reason of its failure to perform the service required of it, is another question; and this precise question does not appear to have ever been decided.

"The evidence clearly shows that whatever the relationship between plaintiff and defendant was, so far as the furnishing of water for fire purposes is concerned, it was entered into by the town in the execution of the power conferred upon it to provide protection against fire for the benefit of all the inhabitants, and there is nothing to indicate that the protection of any specific property was contemplated.

"In providing for a water supply for general fire purposes, a municipality exercises the same character of functions that it does when it provides fire-engines and other apparatus for the extinguishment of fires, or when it employs policemen or watchmen for the protection of its inhabitants against crime.

"Where, in the exercise of this power, it establishes or acquires its own system of waterworks, and undertakes to itself provide an adequate supply, it is settled beyond controversy that the city is not liable to its citizens whose property is destroyed by fire for failure to provide an adequate supply, the power vested in the city being in its nature legislative and governmental, requiring the exercise of judgment

and discretion. (*Patch* v. *Covington*, 17 B. Mon. 722;[1] *Van Horne* v. *Des Moines*, 63 Iowa, 447;[2] *Tainter* v. *Worcester*, 123 Mass. 311;[3] *Ins. Co.* v. *Keeseville*, 148 N. Y. 46;[4] *Mendell* v. *Wheeling*, 28 W. Va. 233;[5] *Wheeler* v. *Cincinnati*, 19 Ohio St. 19;[6] *Brinkmeyer* v. *Evansville*, 29 Ind. 187; *Black* v. *Columbia*, 19 S. C. 412;[7] *Foster* v. *Lookout Water Co.*, 3 Lea, 42. See, also, *Sievers* v. *San Francisco*, 115 Cal. 654.[8])

"Where, instead of acquiring its own system and attempting to itself provide the water for such purpose, it contracts with a water company to furnish such service, thus making such company practically the agent or employee of the city, the many decisions of the appellate courts of other states are practically unanimous in holding, upon apparently the soundest reasoning, that the water company is not liable at the suit of a third person whose property was destroyed by fire, by reason of its failure to supply sufficient water to the town for such purpose. (*Becker* v. *Water Works*, 79 Iowa, 419;[9] *Davis* v. *Water Works*, 54 Iowa, 59;[10] *Britton* v. *Water Co.*, 81 Wis. 48;[11] *Ferris* v. *Water Co.*, 16 Nev. 44;[12] *Beck* v. *Kittanning Water Co.*, (Pa.), 11 Atl. 300; *Nickerson* v. *Bridgeport etc. Co.*, 46 Conn. 24;[13] *Fowler* v. *Water Works*, 83 Ga. 219;[14] *Atkinson* v. *Newcastle*, 2 Ex. Div. 441; *Foster* v. *Lookout Water Co.*, 3 Lea, 42; *Eaton* v. *Water Works*, 37 Neb. 546;[15] *Fitch* v. *Water Co.*, 130 Ind. 214;[16] *Mott* v. *Water Co.*, 48 Kan. 12;[17] *Housman* v. *Water Co.*, 119 Mo. 304.[18])

"The rulings in these cases are generally to the effect that there is no privity of contract between the water company and a citizen which will support the action, and that the contracting company cannot be charged with a greater liability than the city itself.

"Only two appellate courts have held otherwise, those of Kentucky and North Carolina.

[1] 66 Am. Dec. 186.
[2] 50 Am. Rep. 750.
[3] 25 Am. Rep. 90.
[4] 51 Am. St. Rep. 667.
[5] 57 Am. Rep. 665.
[6] 2 Am. Rep. 368.
[7] 45 Am. Rep. 785.
[8] 56 Am. St. Rep. 153.
[9] 18 Am. St. Rep. 377.
[10] 37 Am. Rep. 185.
[11] 29 Am. St. Rep. 856.
[12] 40 Am. Rep. 485.
[13] 33 Am. Rep. 1.
[14] 20 Am. St. Rep. 313.
[15] 40 Am. St. Rep. 510.
[16] 47 Am. St. Rep. 258.
[17] 30 Am. St. Rep. 267.
[18] 41 Am. St. Rep. 654.

"The North Carolina ruling (*Gorrell* v. *Water Supply Co.,* 124 N. C. 328[1]) was based on the opinion of the Kentucky court in *Paducah Lumber Co.* v. *Paducah Water Supply Co.,* 89 Ky. 340,[2] and as there was in that case a private contract between the plaintiff and the water company, the opinion consists principally of *dicta.*

"It is true that the question does not appear to have been presented to our supreme court, but I can see no reason to doubt the correctness of the rule approved by the great weight of authority.

"If such be the true rule, and if the defendant be liable here, the only property in the town specifically protected by such a contract for water for general fire purposes, and the only property for loss of which a recovery could be had in an action for damages based on a breach of such contract, is the property of the municipality itself.

"Doubtless a water company may so bind itself by contract with a person to furnish him water for the extinguishment of fires as to render itself liable for the value of property of such person destroyed by fire, by reason of its failure to furnish him a sufficient supply of water. (See *New Orleans etc. R. R. Co.* v. *Meridian Waterworks Co.,* 72 Fed. 227; *Knappman Co.* v. *Water Co.* (N. J.), 45 Atl. 692; *Paducah Lumber Co.* v. *Paducah Water Supply Co.,* 89 Ky. 340.[2])

"It may be assumed here that it is within the power of a municipality, as a property-owner, to enter into such a contract with a water company for the protection of the property which it owns as a legal individual, but it certainly needs something more than evidence showing an accepted service for *general fire purposes* to establish such a contract, and the evidence here shows nothing more.

"The distinction between the powers conferred on municipal corporations for public purposes and for the general public good and those conferred for private corporate purposes is clearly marked by the decisions. (See *Springfield etc. Ins. Co.* v. *Keeseville,* 148 N. Y. 46.[3])

"In providing protection against fire to its inhabitants, the municipality exercises a power conferred solely for the general public good, and from the exercise of which the

---

[1] 70 Am. St. Rep. 598.  [3] 51 Am. St. Rep. 667.

[2] 25 Am. St. Rep. 536.

municipality, as a property-owner, derives the same incidental benefit that every other property-owner does,—no more, no less.

"Yet in each there is a contractual relation.

"The bar to such a recovery in each case is, that the contract was not for the protection of any particular property or person, but was for general benefit of all the property and persons within the municipal limits; and was entered into by the town as a public agency, solely for that purpose, and in the exercise of its power to furnish such general protection.

"I cannot escape the conclusion that the relations between plaintiff and defendant, as shown by the evidence, are susceptible of no other construction; that the defendant assumed no obligation regarding plaintiff's property different from that assumed by it regarding all of the other property within the town; and that the plaintiff, as a property-owner, is without right of action."

These views and the conclusions expressed are hereby adopted as the views and conclusions of this court. A consideration of the cases presented by appellant to this court, which cases were not before the learned judge of the trial court, do not in any wise serve to shake the soundness of the conclusions which he there expressed. *Paducah Lumber Co.* v. *Paducah Water Supply Co.,* 89 Ky. 340,[1] charged upon an express contract, whereby, for the granting of a franchise for forty years, the water company agreed, with other things, for the benefit of the inhabitants of the town and their property, to maintain "two pumping-engines each having capacity to force into the stand-pipe two million gallons of water every twenty-four hours, and to keep a head of water sufficient to throw from any eight of the hydrants simultaneously and for five consecutive hours at any one period of time, streams through fifty feet of hose one hundred feet high." A recovery was sought for the breach of the express terms of this contract. *Gorrell* v. *Water Supply Co.,* 124 N. C. 328,[2] was in principle identical with the Paducah case, which it cites with approval. There, too, it was alleged that the defendant company "contracted to furnish said city with pure and

[1] 25 Am. St. Rep. 536.     [2] 70 Am. St. Rep. 598.

wholesome water for the use of its citizens and of force at
all times sufficient to protect the inhabitants of the city against
loss by fire.   And further to erect and maintain reservoirs,
water-towers, pump-houses, and other appurtenances and at-
tachments necessary or expedient for the proper conducting
and carrying on said waterworks so as to supply at all times
the greatest protection against fire.''   And to maintain ''a
pressure of water for fire purposes sufficient to throw six
streams of water from six hydrants to a vertical height of
one hundred feet in still air, each stream being taken from
one hydrant and with one hundred feet of hose and with
a one-inch ring nozzle, and the said companies shall constantly
day and night, except from unavoidable accidents, keep all
the said hydrants supplied with water for fire purposes and
shall keep them in good order for such service.''   In *Planter's
Oil Mill* v. *Monroe Waterworks etc. Co.*, 52 La. Ann. 1243,
a franchise and grant for thirty years had been made by
the city with the defendant company under this express con-
tract:   ''To supply and have ready at all times for use in
pipes and hydrants erected on the premises by plaintiff as a
protection against fire, water in sufficient quantities and with
a specified force of pressure sufficient to serve the purpose of
the extinguishment of fires.''   The supreme court, dealing
with the facts of the case, declared that the municipality is
not liable in damages where it has a contract with a private
company which fails adequately to meet its obligations, but
that it is not so clear that the private company making such
contract and failing to meet its duties thereunder may not
be held answerable to the citizen for loss he sustains in con-
sequence of such failure.   In each of these cases it will be
observed that the court was dealing with contracts whereby
the water companies for valuable concessions and exclusive
privileges had agreed to do and to maintain certain specific
things by way of protection from fire, and the *gravamen* of
the charge against each and all of the companies was, that
they had violated their contract in failing to do the particular
things for the doing of which they had expressly contracted.
The broad distinction between those cases and the one at
bar is, as pointed out in the opinion of the trial judge, that
there is no express covenant in the contract between this
plaintiff and this defendant, and the security to plaintiff's

property was only the same security which in the exercise of its governmental functions the plaintiff had obtained for the whole town.

The only other cases cited by appellant are Kentucky cases following the decision in the Paducah case, above cited, and the case of *Watson* v. *Inhabitants of Needham*, 161 Mass. 404. In this last case an action by a citizen against the town, which itself was supplying the water, was upheld; but that was under a doctrine at variance with the established rule in this state, which denies a right of action against a municipality for damages occasioned by the negligence of its officials or employees. (*Huffman* v. *San Joaquin Co.*, 21 Cal. 426; *Chope* v. *City of Eureka*, 78 Cal. 591;[1] *Sievers* v. *San Francisco*, 115 Cal. 655.[2])

The order appealed from is therefore affirmed.

McFarland, J., and Lorigan, J., concurred.

Hearing in Bank denied.