[S. F. No. 9306. In Bank.—June 22, 1920.]

CITY OF SAN LEANDRO (a Municipal Corporation), Petitioner, v. THE RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

[S. F. No. 9307. In Bank.—June 22, 1920.]

CITY OF RICHMOND (a Municipal Corporation), Petitioner, v. THE RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

[S. F. No. 9308. In Bank.—June 22, 1920.]

CITY OF OAKLAND (a Municipal Corporation), Petitioner, v. THE RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

[S. F. No. 9309. In Bank.—June 22, 1920.]

CITY OF BERKELEY (a Municipal Corporation), Petitioner, v. THE RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

[S. F. No. 9314. In Bank.—June 22, 1920.]

CITY OF ALAMEDA (a Municipal Corporation), Petitioner, v. THE RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

[1] WATER COMPANY—SERVICE TO MUNICIPALITIES—FIXING OF RATES—JURISDICTION OF RAILROAD COMMISSION — PUBLIC UTILITY. — The jurisdiction of the railroad commission to fix the rates to be charged by a water company for water supplied to municipalities depends upon whether, as regards the services for which the charges are sought to be imposed, the company has actually devoted its property to a public use.

[2] ID.—SERVICE FOR ALL PURPOSES—DEDICATION TO PUBLIC USE.—A water company which has dedicated its service impartially to all municipalities requiring such service is dedicated to a public use.

[3] ID.—SUPPLYING WATER FOR MUNICIPALITIES—RIGHT TO COMPENSATION.—A water company supplying water to municipalities must be compensated for the cost of operating and maintaining the portions of its system devoted to the requirements of such municipalities, and the "services" in return for which the charges are imposed are those involved in supplying the water and maintaining the system.

[4] ID.—WATER SERVICE TO MUNICIPALITIES—FIXING OF RATES—POWER OF RAILROAD COMMISSION—CONSTITUTIONAL LAW.—The fixing of charges for water supplied to municipalities by a water company is within the rate-fixing power of the railroad commission, and is not an interference with municipal money or property or the imposition of a tax in violation of section 13 of article XI of the state constitution, nor an interference with a "municipal affair" within the meaning of sections 6 and 8 of article XI.

[5] ID.—FIXING OF RATES—OMISSION TO FIX RATE BASE—FAILURE TO ALLEGE ON APPLICATION FOR REHEARING—OBJECTION ON CERTIORARI PROCEEDINGS PRECLUDED.—In view of the terms of section 66 of the Public Utilities Act, municipalities which in their application to the railroad commission for a rehearing of the matter of fixing rates to be charged them by a water company for supplying water fail to specifically set forth the alleged failure of the commission to fix a rate base for its order, are precluded from urging such objection in the supreme court on *certiorari* proceedings.

[6] ID.—RATES NOT CONFISCATORY.—The requirement that municipalities pay a water company for its service a sum amounting to less than ten per cent of the total revenue allowed the company does not exceed the jurisdiction of the commission nor amount to confiscation, where the cities are receiving all of their water fire protection from the company, and, in conjunction with the domestic and industrial consumers, are using the entire water supply, pumps, reservoirs, transmission lines, all the mains of four inches in diameter and all the larger mains, aggregating approximately four hundred and forty miles in length, and are having the use of special service and higher pressure in the case of sudden demands caused by large fires.

[7] ID. — DISCRETIONARY FINDING OF COMMISSION — AVAILABILITY OF WATER PROJECT—FINDING CONCLUSIVE ON CERTIORARI.—The supreme court will not, on *certiorari* proceedings to review an order of the railroad commission fixing water rates to be paid by municipalities, disturb the discretionary finding of the commission as to whether a certain water project would be available to the needs of the consumers during the year for which the rates are imposed.

[8] ID. — FINANCIAL INABILITY TO MEET RATES — EFFECT OF. — The financial inability of municipalities to meet the water rates fixed by the commission is a matter of expediency to be weighed by the commission, and cannot be considered by the court in a proceeding attacking the legality of the charges.

PROCEEDINGS on Certiorari to review an order of the Railroad Commission fixing water rates.   Order affirmed.

The facts are stated in the opinion of the court.

H. L. Hagan, Leon E. Gray, Frank V. Cornish, G. Clark, Wm. J. Locke, D. J. Hall and Harris P. Jones for Petitioners.

Hugh Gordon and Douglas Brookman for Respondent.

Creed, Jones & Dall and Fitzgerald, Abbott & Beardsley for East Bay Water Company.

LENNON, J.—*Certiorari* upon the petition of each of the above-named petitioners seeking a review by this court of an order of the Railroad Commission of the state of California which fixed the rates to be charged by the East Bay Water Company for water supplied. In the order directing the issuance of a writ of review, the above-entitled proceedings were consolidated. The petition in each one of the separate proceedings attacks the same portion of the decision of the commission upon practically the same grounds. The rates fixed in said decision make no distinction between the residents of each community and, while it is true that the basic charge allocated to each community varies, the underlying principle is the same in all cases. Therefore, it is obvious that if any one of the cities prevails, there must be a re-adjustment of the rates as to all the communities, or, in other words, an entire new allocation of rates.

On July 1, 1918, the Railroad Commission, by decision No. 5534, fixed the total revenues to which the water company was entitled at two million dollars. In allocating or apportioning this total sum among the various classes of consumers, the commission determined that approximately one hundred and ninety-two thousand dollars should be charged against the East Bay cities. Portions of this one hundred and ninety-two thousand dollar charge were imposed upon the respective petitioners as follows:

| | |
|---|---|
| Oakland............ ............... .......$105,500 |
| Berkeley......... ............... ......... 43,000 |
| Alameda.......... ............... ........ 22,000 |
| Richmond......... ............... ....... 11,000 |
| San Leandro.......... ............... 2,500 |

The cities were, in addition, required to pay rates upon all pipe-lines and hydrants installed subsequent to January 1, 1917, and a surcharge of ten per cent on the above amounts. Upon the cities making a showing to the commission that their tax budgets had already been made up and that it would be impossible to provide money to meet this new charge, the commission, by a supplemental order, on August 13, 1918, temporarily suspended the above rates as to the municipalities. On August 8, 1919, the East Bay Water Company filed an application alleging the necessity of increased revenue and requesting the reimposition of the rates upon the municipalities. After a hearing, the commission by its decision No. 6755, determined that the water company was entitled to a gross income of two million three hundred and fifty thousand dollars; approved rates which it was estimated would yield that income and reimposed upon the East Bay cities the charges fixed in its prior decision. Applications of the petitioners for a rehearing were denied by the commission November, 1919.

Petitioners urge the objection, in various forms, that the commission is without jurisdiction to impose these charges for the reason, it is claimed, that, as to the services in return for which the charges are imposed, the water company is not a public utility.

[1] The jurisdiction of the commission to fix the charges is, of course, dependent upon whether, as regards the services for which the charges are sought to be imposed, the company has actually devoted its property to a public use. (*Allen* v. *Railroad Commission,* 179 Cal. 68, 89, [8 A. L. R. 249, 175 Pac. 466].)

Upon this phase of the case, the decision of the commission declares that the basic charges in controversy are imposed upon the several municipalities mentioned "for water used *by them* for fire-fighting, street sprinkling and other purposes. . . . Admittedly it is difficult to equitably distribute the expense of maintaining and operating a system such as this among the various consumers in proportion to the benefits derived by each. An exact allocation of the cost to the company of rendering a service such as is rendered to the cities is impossible. The amount of water used is not a proper measure, because the demand for fire purposes is wholly unexpected and the company must stand ready

to deliver a large quantity of water within a short period at any point where the fire may occur. This has been designated a 'readiness to serve' or 'stand-by' service. The utility is rendering a valuable service to the municipality and its taxpayers which requires an investment and operating expense largely in excess of what would be required if domestic and industrial consumers only were served." It has been decided in this state that the law does not impose any duty upon a water company, as a public utility, to furnish a municipality, or its inhabitants, with water *for a particular purpose.* (*Ukiah* v. *Ukiah Water & Improvement Co.,* 142 Cal. 173, [100 Am. St. Rep. 107, 64 L. R. A. 231, 75 Pac. 773].; *Niehaus Bros. Co.* v. *Contra Costa etc. Co.,* 159 Cal. 305, [36 L. R. A. (N. S.) 1045, 113 Pac. 375].) The cases cited further hold that liability for loss resulting from fire is not an incident of the ordinary relation of water distributer and consumer, but such liability on the part of a water company can only be created by an express private contract whereby the water company agrees to furnish water as a protection against fire. Accordingly, throughout the hearing in the case now before the court, the Water Company steadfastly denied that it had assumed, or could as a public utility be compelled to assume, any liability to furnish water to the municipalities or their inhabitants for the particular purpose of fire protection, claiming that it is a public utility to the extent, and only to the extent, that it furnishes water as a commodity and irrespective of the purpose for which the water is used by the consumer. It is upon this stand taken by the Water Company that petitioners rest their argument that the commission is attempting to impose upon them charges for a service which they are not receiving and which rests upon private contract and cannot be regulated as a public utility service. The argument in this behalf, however, fails to distinguish between the furnishing of water for a particular purpose, such as for fire protection, and supplying it as a commodity merely, in the quantity and manner desired, but without reference or regard to the use to which it is put by the consumer. While the company is not furnishing water to the municipalities for any particular purpose and is not liable for fire protection, it is furnishing water as a commodity which is ready for use and may be received and used by

the municipalities for certain purposes, the most important of which is that of fire protection. That the Water Company is thus rendering a material municipal service, and that such service cannot be dispensed with by the cities at present is beyond question. It is equally indisputable that this service has been dedicated impartially to all consumers within the class that requires such services. **[2]** Having been devoted to all municipalities within the field of the company's operations and the use being one of importance to the public generally, the dedication is of such a character that every member of the class has a legal right to the use, and it falls, therefore, within the accepted definition of a public use. (*Allen* v. *Railroad Commission, supra.*)

The cases of *Lewis* v. *People's Water Co.*, 3 Cal. Railroad Com. Rep. 416, and *City of Alameda* v. *People's Water Co.*, P. U. R. 1916D, 865, hold that, in the absence of a public duty to furnish fire protection, a water company cannot be compelled to extend its mains solely for the purpose of rendering such protection adequate. Petitioners rely upon these cases as establishing the principle that the commission is without jurisdiction to control the services for which it has imposed the charges. It will be noted that these cases do not go to the extent of holding that the company cannot be compelled to extend its service so as to furnish the municipalities with water in an adequate manner, provided that the municipalities compensate the company for such extension and that the water is supplied as a commodity and without liability for loss by fire in case it is used by the municipalities for fire protection. Section 549 of the Civil Code provides: "All corporations formed to supply water to cities or towns must furnish pure fresh water to the inhabitants thereof, for family uses, so long as the supply permits, at reasonable rates and without distinction of persons, upon proper demand therefor; and must furnish water to the extent of their means, in case of fire or other great necessity, free of charge." Aside from the fact that water need no longer be furnished "free of charge," this section remains in force. The phrase "to the extent of their means," as used in that section, may signify merely that the company is not an insurer as regards fire protection, or that the furnishing of water to municipalities is a function secondary in importance and one which must not be

permitted to interfere with the primary function of furnishing water to private individuals. On the other hand, it may mean that water companies cannot be compelled to increase their means in order to supply water to municipalities. That point has never been passed upon by the Railroad Commission nor by this court, and seems not likely to arise in so far as petitioners are concerned, for the reason that the company has stipulated to such an extension and asserts its refusal in the past to have been due solely to the failure of petitioners to provide for compensation to the company for the additional expenditure. Moreover, it is unnecessary, for the purposes of this decision, to pass upon the question as to whether or not such extension of service can be compelled. While the power to compel an extension of plant is an ordinary element of the right to regulate a public utility, the mere fact that the legislature deemed it expedient to dispense with this power does not take away the public utility character of the service nor prevent regulation of the service "within the present means."

The fact that the commission stated that the charges are imposed for "services" is not, as is contended by petitioners, inconsistent with the principle that the company is furnishing water to the cities as a commodity and not as a fire protection service. Admittedly the amount of water furnished the municipalities is not a fair standard of valuation. [3] The Water Company must be compensated for the cost of operating and maintaining the portions of its system devoted to the requirements of the municipalities, and the "services" in return for which the charges are imposed are those involved in supplying the water and maintaining the system.

[4] The fixing of the charges is within the rate-fixing power of the commission, and is not an interference with municipal money or property or the imposition of a tax in violation of section 13 of article XI of the constitution of this state. The services are rendered to the municipalities and should be paid for by them and not by the ordinary consumers. Merely because the money to pay the charges will probably be raised by taxation is no argument for holding the charges themselves to be taxes, and, since the payment of the charges is dependent upon the continuing acceptance by the cities of the services in question, they are essentially rates and not taxes. Nor is the fixing of rates for the services to

the cities an interference with a "municipal affair" within the control of the municipalities, within the meaning of sections 6 and 8 of article XI of the state constitution. Furthermore, even if it were, the provisions of section 23 of article XII of the constitution, and of the Public Utilities Act, [Stats. 1911 (Ex. Sess.), p. 18], give the Railroad Commission power to regulate public utility services rendered to municipalities as well as those to individuals.

Section 23 of article XII of the constitution of this state, in vesting the commission with jurisdiction in the matter of the regulation of public utilities, saves to the cities the power to make local regulations governing public utilities "*other than the fixing of rates.*" Therefore, by virtue of this provision, a vote of the respective petitioners is unnecessary to confer upon the commission jurisdiction to regulate the rates in question.

The contention is made that, even if the service is a public utility service subject to regulation by the commission, the commission did not regularly pursue its authority in fixing the amount of the charges. The method pursued was as follows: There were submitted, on behalf of the company and also on behalf of the cities, various rate bases which purported to comprise the value of the property upon which the company was entitled to a reasonable return. The smallest rate base was submitted by a representative of one of the petitioners, the city of Berkeley. At the same time the company submitted a statement of its financial needs. The commission expressly refrained from passing upon the value of the company's property or a proper interest return; it computed the revenue to which the company would be entitled if allowed interest at eight per cent on the rate bases submitted and found that, allowing interest at this per cent, the smallest rate base submitted, if corrected by the addition of certain items erroneously omitted, would yield a return at least equal to the amount claimed as necessary to meet the financial needs of the company. Accordingly, a sum equal to the amount of the financial needs of the company, plus operating expenses, was fixed by the commission as the amount of revenue to be allowed the company. The commission then estimated from the evidence before it the proportion of this revenue to be borne by the cities. It is now claimed that the commission arbitrarily allowed a return based upon the

financial needs of the company, whereas the amount to which the utility is entitled is a fair return on a reasonable rate base. In its decision of October 11, 1919, the commission states: "It is very important to provide a sufficient revenue to put the company's credit upon a sound basis so that it may obtain money at reasonable rates, thus preventing a heavier burden being placed upon the consumers. The production of this revenue, however, to care for the financial needs of this company, should not place an unreasonable burden upon its consumers *nor should it be in excess of a reasonable return upon the value of the utility's property.*" (Italics are ours.) The commission then proceeded to compare the amount of the financial needs with an eight per cent return on the lowest rate base submitted and found it did not exceed that return. Therefore, even though no rate base nor rate of interest was expressly found and adopted by the commission, nevertheless it follows as a necessary implication from all that was said and done by the commission that it found that this particular rate of interest and rate base represented at least a reasonable rate of return on the fair value of the company's property in the sense that neither were, as against the consumer, excessive. Since the amount allowed the company was first compared with this return to ascertain that it did not exceed such return, the allowance was, in effect, nothing more than an allowance of a return on the investments of the company. In view of the fact that it is not claimed that the revenue allowed exceeds a reasonable return on a reasonable rate base, petitioners' objection to the method of procedure is purely academic. [5] But, however that may be, petitioners failed to specifically set forth the alleged failure to fix a rate base in their applications to the commission for a rehearing, and are, therefore, precluded by the terms of section 66 of the Public Utilities Act from urging the objection in this court.

It is further contended that the commission was without jurisdiction to impose the charges upon the cities unless it first ascertained the value of the portion of the system of the Water Company devoted to service to the cities and also the cost of operating this portion of the system. As previously indicated herein, the commission states: "Admittedly it is difficult to equitably distribute the expense of maintaining and operating a system such as this among the various

consumers in proportion to the benefits derived by each. An exact allocation of the cost to the company of rendering a service such as is rendered to the cities is impossible.'' There is no rule which requires the commission to allocate charges for public service among the different classes of consumers by an exact mathematical calculation. In the vast majority of cases this is impossible, for there is no segregation of plant. If the mere fact that a segregation of plant or cost of operation is impossible rendered invalid the charges here sought to be imposed, for like reason the commission would be without jurisdiction to fix the rates for water supplied to private individuals. Of course an allocation based upon estimate presents the possibility of an abuse of the rate-fixing power. For that reason the court will closely scrutinize rates so fixed lest the exercise of the rate-fixing power merge into a system of confiscation. We take into consideration the facts that the cities are receiving substantially all of their water fire protection from the East Bay Water Company, with the possible exception of San Leandro; that, in conjunction with the domestic and industrial consumers, they are using the entire water supply, pumps, reservoirs, transmission lines, all the mains of four inches in diameter and all the larger mains, aggregating approximately 440 miles in length, and are having the use of special service and higher pressure in the case of sudden demands caused by large fires. **[6]** Having this in view, it cannot be said that a requirement that these cities pay a sum amounting to less than ten per cent of the total revenue allowed exceeds the jurisdiction of the commission or amounts to confiscation.

Certain property of the East Bay Water Company, known as the San Pablo Project, is now under construction. There was testimony at the hearing that this lake contained at the time of the hearing about two billion gallons, or eight months water storage; that this could be connected with the Water Company's mains supplying water to East Bay consumers within thirty days in case of an emergency; that the company was at the time drawing from San Leandro Lake two million gallons a day in excess of the safe yielding capacity of that lake, and was able to do so because of the San Pablo storage available in case of an emergency. The value of the San Pablo Project was excluded from the rate bases with

which the statement of financial needs was compared. It is contended by petitioners, however, that, because certain expense items, including taxes and interest on bonds, connected with the San Pablo Project, were included in the statement of financial needs approved by the commission, the San Pablo Project was treated as property used and useful upon which the company was allowed a return. [7] Even assuming this view to be tenable, it was within the jurisdiction of the commission, in the exercise of its discretionary powers, to determine from the facts before it whether or not the San Pablo Project would be available to the needs of the consumers during the year for which the rates were imposed. This court will not disturb the finding of the commission upon that question. (*Union Hollywood Water Co.* v. *Los Angeles,* 178 Cal. 206, [172 Pac. 983].)

[8] Petitioners urge their inability to meet this additional financial obligation as an objection to the imposition of the charges. This was a matter of expediency to be weighed by the commission, but, of course, cannot be considered by this court in a proceeding attacking the legality of the charges.

The decision is affirmed.

Olney, J., Shaw, J., Wilbur, J., and Lawlor, J., concurred.

Rehearing denied, a majority of the Justices not having assented to the granting of a rehearing.