[No. B004423. Second Dist., Div. Three. July 15, 1985.]

LAINER INVESTMENTS et al., Plaintiffs and Respondents, v.
DEPARTMENT OF WATER AND POWER OF THE CITY
OF LOS ANGELES et al., Defendants and Appellants.

2

**4**

[black redaction bars]

COUNSEL

Ira Reiner, Gary R. Netzer and James K. Kahn, City Attorneys, Edward C. Farrell, Chief Assistant City Attorney, Terso R. Rosales, Diana Mahmud and Samuel James Otero, Deputy City Attorneys, for Defendants and Appellants.

Halpern & Halpern and Irving L. Halpern for Plaintiffs and Respondents.

OPINION

ARABIAN, J.—

### INTRODUCTION

Plaintiffs and respondents Lainer Investments; Designs by M.J.W., Inc.; V & W Industries, Inc.; and Barrington Hall, Inc.; who are, respectively, the landlord and tenants of a building which burned down (collectively, respondents), brought this action against defendants and appellants the Department of Water and Power of the City of Los Angeles and the City of Los Angeles (collectively, City), seeking contract and/or tort damages for loss of property and loss of income.

In the first part of the bifurcated trial, the trial court determined there was a contract between the parties under which City was obligated to supply water to the fire-sprinkler system in respondents' building by means of a special pipe and valve which City had installed for that purpose at respondents' request.

Thereafter, by special verdict, the jury found that City had breached its contract with respondents; that due to City's negligence, City's equipment, which supplied water to the sprinkler system, was in dangerous condition at the time of the fire; and that City's negligence was the proximate cause of respondents' injuries.

Judgment was entered on the jury's award to respondents of approximately $2 million and City appealed. We reverse the judgment against City.

## FACTS

In 1973, respondent Lanier Investments constructed a building (later occupied by the other respondents in this action), in which it installed a fire-sprinkler system with 478 interior sprinkler heads. During construction, respondents requested, and City installed, an eight-inch "fire service connection," the size required to service the 478 sprinkler heads in the building.

A fire service connection is made by tapping the public main water line in the street, and bringing a pipe (in this case a pipe measuring eight inches in diameter) to the property line, where it is connected with a "water gate valve" and a meter which together control and measure the flow of water to a building fire-sprinkler system.[1] The City is required by law to provide this fire service to anyone who applies for it.

Accordingly, on February 27, 1973, the fire-sprinkler contractor for the Lainer Investments building wrote a letter to City requesting installation of an eight-inch fire service connection. The contractor enclosed with his letter a Lainer Investments check for $3,566, the ordinary fee charged by City to cover the costs of installing the service.[2] The flat monthly charge to respondents for this eight-inch fire service was $30, whether or not any water was used, the rate as fixed by ordinance.

Respondents' fire service was located in a vault to which City maintained exclusive control. Several times a year the vault was opened and the meter was read. The gate valve, however, was not specifically tested after July of 1973, when billing for the fire service commenced.

On June 21, 1977, a fire occurred in respondents' building. Although the sprinkler system was activated, an insufficient water supply to the system prevented the sprinklers from operating properly. Even though the building's fire alarm system was activated, and the fire department arrived within four minutes thereafter, the fire rapidly engulfed respondents' building and the roof collapsed within ten minutes of the sounding of the alarm.

---

[1] That one tap of the public main to the property line is also used for the domestic water service to the property. The domestic water service meter is laid side by side with the fire service installation in a vault City places in the ground.

[2] The letter from the sprinkler contractor read as follows:
"Gentlemen,
"Enclosed is Lainer Investments Check No. 2628, in the amount of $3,566, for an eight-inch fire service at 8615 Tamarack Avenue.
"We will shortly forward you a plan showing you the exact location of this fire service connection."

After the fire, it was determined that the gate valve of the fire service was open only one and one-half of a possible twenty-six turns. For that reason, the fire-sprinkler system had insufficient water pressure and was unable to extinguish the fire. Expert testimony established that fire damage to the building and its contents would have been limited to approximately a 500-square-foot area (of the 60,000-square-foot building) had the gate valve been fully open.

The meter readers had been unable to visually ascertain whether the valve was open because it was a "nonindicating valve" commonly used in the utility industry. No water industry rule or regulation mandates that "indicating" valves be used in a water utility fire service.

### ISSUES

1. Whether City is immune from tort liability.

2. Whether City entered and breached an express contract for the special purpose of providing fire protection to respondents' property.

### DISCUSSION

#### I. *City is immune from tort liability.*

█ City's contention that it is immune from tort liability is meritorious.

Government Code section 815, subdivision (a), declares that a public entity is not liable for injury caused by its own act or omission or that of a public employee, except as provided by *statute*. Subdivision (b) of that section provides that a public entity's statutory liability is subject to the public entity's statutory *immunities* and any defenses which would be available to it if it were a private person.[3]

The statutory provision which imposes liability on a public entity for its employee's acts or omissions is subdivision (a) of Government Code section

---

[3]Government Code section 815 provides: "Except as otherwise provided by statute:

"(a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.

"(b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

815.2. However, subdivision (b) of that section provides that a public entity is *not* liable where the employee is *immune* from liability.[4]

Here, since it is clear that City and its employees are immune from liability under Government Code sections 850.2 and 850.4, we need not dwell on whether, under section 815.2, City was otherwise statutorily liable for injuries proximately caused by its employees. (See *Kisbey* v. *State of California* (1984) 36 Cal.3d 415, 418, fn. 3 [204 Cal.Rptr. 428, 682 P.2d 1093] [expedience dictates that we discuss only the question of governmental immunity, rather than whether there was a cause of action stated].)

Government Code section 850.2 provides: "Neither a public entity that has undertaken to provide fire protection service, nor an employee of such a public entity, is liable for any injury resulting from the failure to provide or maintain sufficient personnel, equipment or other fire protection facilities."

Government Code section 850.4 provides: "Neither a public entity, nor a public employee acting in the scope of his employment, is liable for any injury resulting from the condition of fire protection or firefighting equipment or facilities or, except as provided in Article I (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code, for any injury caused in fighting fires."

In *Heieck and Moran* v. *City of Modesto* (1966) 64 Cal.2d 229 [49 Cal.Rptr. 377, 411 P.2d 105], the California Supreme Court determined, under facts very similar to those in this case, that sections 850.2 and 850.4 "expressly" provide a city with immunity from liability for a consumer's damages due to fire. (*Id.*, at p. 233.)

In *Heieck,* the city had allegedly been unable to extinguish a fire because a valve in a water main, which served nearby fire hydrants, was closed by city employees and negligently not reopened. The Supreme Court explained that "whether the alleged injury to plaintiff's premises be viewed as resulting from 'failure to provide or maintain sufficient . . . fire protection facilities' (§ 850.2), or from the closed 'condition' of the water valve (§ 850.4),

---

[4]Government Code section 815.2 provides: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

"(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

the conclusion is inescapable that the Legislature intended to establish immunity under the circumstances alleged by plaintiff.[5]" (64 Cal.2d at p. 233; see Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980 ed.) § 4.30, pp. 371-374.)

In *New Hampshire Insurance Co. v. City of Madera* (1983) 144 Cal.App.3d 298 [192 Cal.Rptr. 548], plaintiff alleged that his building burned to the ground because a negligently closed valve, located several blocks away in the city-owned water system, hampered fire-suppression efforts. (*Id.*, at p. 301.) The *New Hampshire* court held that *Heieck* was controlling, stating: "*Heieck* holds by implication that a valve in a city water system used to furnish water to fight fires is part of the city fire protection 'facilities.' Thus, liability is precluded under both section 850.2 (failure to provide or maintain sufficient fire protection facilities) and section 850.4 (relating to the condition of the fire protection or fire fighting equipment and facilities)." (144 Cal.App.3d at pp. 304-305; see Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980 ed., 1985 Supp.) §§ 4.29, 4.30, pp. 62-63.)

Respondents argue that *Heieck* and *New Hampshire* are inapplicable where, as here, the malfunctioning water valve was installed on private property pursuant to a "specific contract" made for the "specific purpose" of protecting "specific property" against fire damage. However, *Heieck* and *New Hampshire* are not distinguishable on those grounds. In the instant case, as in those cases, the valve, although it was installed on private property, was nonetheless part of the "city water system used to furnish water to fight fires [and as such] is part of the city fire protection 'facilities.'" (*New Hampshire Ins. Co. v. City of Madera, supra,* 144 Cal.App.3d at p. 304.)

Thus, we conclude that, under the reasoning of *Heieck* and *New Hampshire,* sections 850.2 and 850.4 immunize City from a judgment against it

---

[5]In a footnote at this point the Supreme Court states, "It may be noted that this view is consistent with the report of the California Law Revision Commission, which in commenting on Government Code sections 850, 850.2, and 850.4 makes clear that it rejected suggested limitations on immunity for negligent fire protection, such as those now advanced by plaintiff. 'Section 850.4 provides for absolute immunity from liability for injury caused in fighting fires (other than injuries resulting from operation of motor vehicles) or from *failure to properly maintain fire protection equipment or facilities.* There are adequate incentives to careful maintenance of fire equipment without imposing tort liability; . . .' (4 Cal. Law. Revision Com. Rep., p. 862; italics added.) Professor Van Alstyne also recognized (Van Alstyne, Cal. Government Tort Liability [Cont.Ed.Bar 1964 ed.] pp. 309, 618) that the Legislature did not adopt suggested limitations on such immunity made in his study (reprinted in 5 Cal. Law. Revision Com. Rep., pp. 467-468), but instead adhered to existing immunity rules when it recast the entire law of governmental liability and immunity in 1963."

based on tort theories of liability. The Legislature clearly intended those sections to provide immunity under the circumstances of this case.

II. *City did not enter or breach an express contract to provide fire protection to respondents' property.*

■ City's contention that respondents failed to establish City's liability under a contract theory is also meritorious.

■ Although the immunities of the Government Code do not apply to liability based on contract (Gov. Code, § 814), a water company cannot be held liable for failure, from whatever cause, to have a supply of water available on a consumer's premises for use in fire protection unless it "*expressly* assumes the liability." (*Niehaus Bros. Co.* v. *Contra Costa etc. Co.* (1911) 159 Cal. 305, 322-323 [113 P. 375], italics added).

■ The question whether there was a contract between respondents and City and, if so, the terms thereof were tried by the court without a jury.[6] At the conclusion of the presentation of evidence, the trial court stated: "The Court finds that there was in fact a contract between [respondents] and [City] for the furnishing of water for this fire system." Further, the court held that under the contract City was obligated to keep the valve fully open in order to provide an eight-inch flow of water to the sprinkler system.[7]

---

[6]We do not, and need not, address City's contention that the trial court usurped the jury's factfinding function when it determined there was a contract between City and respondents and the terms thereof.

[7]In respondent's brief on appeal, they summarized the following uncontradicted evidence presented to the trial court in support of their theory that there was an express contract between City and respondent which obligated City to provide sufficient water to their building for purposes of fire protection:

"1. Plaintiffs made application to DWP for the installation of an 8-inch fire service to plaintiffs' building [see fn. 2] and DWP prepared application and other forms which set forth details as to the requested installation and its use. Each of those forms referred to the fire service installation at plaintiffs' property.

"2. A DWP fire service is an installation of certain devices for the express purpose of providing fire protection to buildings in the form of a water supply solely to a fire sprinkler system in the building.

"3. The '8-inch' designation of the fire service refers to the diameter of the pipe through which the water flows from the DWP pipeline to the customer's fire sprinkler system. An 8-inch water flow supply was required and would have been sufficient for the effective operation of the building fire sprinkler system during a fire because of the number of sprinkler heads in the system.

"4. Plaintiffs paid $3,566.00 to DWP, the amount required for the installation of an 8-inch fire service. Payment of said amount was required before the installation.

"5. DWP installed an 8-inch fire service to supply water solely to the fire sprinkler system in plaintiff's building.

"6. DWP submitted to plaintiffs periodic bills for the specified charges for the continuing availability of the 8-inch fire service which were paid by plaintiffs from the time the fire service was installed, to and including the date of the fire. The water supply to plaintiffs' fire sprinkler system would have been shut off if such bills had not been paid."

While the evidence may support the trial court's determination that there was a "contract" between City and respondents, it was at best an "implied contract springing from the ordinary relation of a public water company and its consumers." (*Niehaus Bros. Co.* v. *Contra Costa etc. Co., supra,* 159 Cal. at p. 316.)

In *San Leandro* v. *Railroad Commission* (1920) 183 Cal. 229 [191 P. 1], the Supreme Court interpreted *Niehaus Bros. Co.* v. *Contra Costa etc. Co., supra,* 159 Cal. 305, and *Ukiah* v. *Ukiah Water and Improvement Co.* (1904) 142 Cal. 173 [75 P. 773]. ▮ ▮ ▮ ▮ ▮ The *San Leandro* court explained that those cases "hold that liability for loss resulting from fire is not an incident of the *ordinary* relation of water distributor and consumer, but such liability on the part of a water company can only be created by an *express private contract whereby the water company agrees to furnish water as a protection against fire.*" (183 Cal. at p. 233, italics added.)[8]

The facts in *Niehaus Brothers Co.* v. *Contra Costa etc. Co., supra,* 159 Cal. 305, are very similar to those in this case. In *Niehaus,* plaintiff had seven fire hydrants installed on its premises at its own expense. The water company connected its street mains with service-pipes on plaintiff's property in order to furnish a supply of water to the mill for general purposes; some of the service-pipes led to these hydrants. The water supply to the hydrants could be turned on or off at will by means of valves. The mill caught fire and was destroyed.

The trial court found that there was an express contract between the water company and plaintiff "for a supply of water to [plaintiff's] premises . . . for fire protection." (159 Cal. at p. 309.) The trial court also found the water company was a quasi-public corporation; that its rates were fixed by a town ordinance; that the rate fixed for each fire hydrant was 50 cents a month and that plaintiff had been paying that sum as consideration for the water company supplying water for extinguishing fire, whether or not the hydrants were used. (*Id.,* at p. 308). Finally, the trial court determined the destruction of the mill was due to the negligent failure of the water company to have any water supply in its street mains available to the hydrants on plaintiff's premises at the time of the fire. (*Id.,* at pp. 307-308.)

---

[8]An express contract is defined as one, the terms of which are stated in words (Civ. Code, § 1620), while an implied contract is defined as one, the existence and terms of which are manifested by conduct (Civ. Code, § 1621). "As the Supreme Court said in *Klebe* v. *United States* [1923] 263 U.S. 188, 192, 44 S.Ct. 58, 59, 68 L.Ed. 244 '[a] contract implied in fact is one inferred from the circumstances or acts of the parties but an express contract speaks for itself and leaves no place for implications.'" (*Rogers* v. *American President Lines, Ltd.* (9th Cir. 1961) 291 F.2d 740, 742.)

In reviewing the trial court's judgment which held the water company liable, the Supreme Court determined there was no special or express contract between the parties for fire protection.[9]

Next, the Supreme Court considered whether the water company obligated itself "to furnish water constantly available at the hydrants on the premises of plaintiff for the extinguishment of fires" from the only relationship shown to have existed between the parties, namely, "that of a public water company connecting its water system with the service-pipes of the mill premises of plaintiff with which service-pipes the plaintiff had connected its hydrants, the company collecting the ordinance rates for water and hydrants established by the town of Berkeley." (*Id.*, at pp. 311-312.)[10]

Having posited the question thusly, the Supreme Court answered it in the negative. Citing *Ukiah* v. *Ukiah Water and Improvement Co., supra,* 142 Cal. 173, the court stated the following rule: "[W]here liability is sought to be created it can only arise from a *private* contract between the company and a consumer, under which an obligation to furnish water for a specific purpose is undertaken by the company." (159 Cal. at p. 313, italics added.)

That being the rule, the Supreme Court distinguished *Hunt Bros. Co.* v. *San Lorenzo Water Co.* (1906) 150 Cal. 51 [87 P. 1093], and *Ukiah* v. *Ukiah Water and Improvement Co., supra,* 142 Cal. 173, on which the plaintiff in *Niehaus* (and respondents in this case) relied. The court observed that in the *Hunt Brothers* case, the extent of the liability arising from the ordinary relationship of distributor and consumer was not involved: "The contract between the parties in that case was an *express* one, whereby for a stipulated consideration the water company agreed to install a hydrant on the premises of the plaintiff, connect the same with its mains, and by means

---

[9]The only evidence the plaintiff in *Niehaus* offered of a specific contract was an agreement with defendant water company's predecessor which showed a privilege was granted plaintiff to erect a hydrant which would be supplied by water from the mains of the water company, plaintiff agreeing not to use any water from the hydrant except in case of fire and to pay an amount as agreed on by the parties. (159 Cal. at p. 309.) Plaintiff paid the flat rate agreed upon to defendant water company's predecessor and to defendant. The Supreme Court held the agreement did not establish a contract for fire protection. (159 Cal. at p. 310.)

The Supreme Court in *Niehaus* also determined that no "special" contract for fire protection had been created by letters the water company sent to plaintiff to persuade it to pay the new ordinance rates for fire hydrants and water. In these letters, the water company had "expatiated upon the advantage plaintiff was deriving from having its hydrants connected with the water system of defendant by a large service-pipe and the protection against fire it was deriving therefrom." (*Id.*, at p. 311.)

[10]In *Niehaus* the Supreme Court stated it attached no importance to the fact that plaintiff refused to pay the monthly charges made by the water company for water or hydrant rates. (159 Cal. at p. 312.)

thereof supply the premises of the plaintiff with water for the express purpose of extinguishing any fire that might occur on the premises." (*Niehaus Bros. Co.* v. *Contra Costa etc. Co., supra,* 159 Cal. at pp. 313-314, italics added.) The Supreme Court noted that in the *Ukiah* case, the only question involved was whether, under a contract between the water company and the City of Ukiah to furnish water to the *public* hydrants at ordinance rates for general fire purposes, the water company was liable for the destruction of the municipality's own property because the water company negligently failed to have water at the *public* hydrants at the time of fire. (159 Cal. at p. 314.) It was held in *Ukiah* that the company was not liable under such contract. (159 Cal. at p. 314.)

The *Niehaus* court emphasized that in the *Ukiah* case "[i]t was not held, or even intimated, that when a water company undertakes to supply water to a *customer for general purposes, but which, through the medium of hydrants voluntarily installed by him upon his premises he may desire to avail himself of to extinguish fire,* that the company thereby impliedly obligated itself to have constantly or at all on hand a supply of water sufficient for such fire protection, and for a failure to have it when needed, is responsible for any loss directly occasioned through such failure." (159 Cal. at p. 314, italics added.)

The *Niehaus* court stated emphatically that, on the contrary, "the rationale of the whole opinion in the Ukiah case negatives the idea that from such ordinary contractual relation a public water company assumes any such obligation. [*Ukiah*], in effect, held that such an obligation is not implied from such relation merely, and can only exist where, *in addition to the ordinary duty of supplying water for general use, a company by express contract assumes the additional obligation of furnishing it in sufficient quantity to protect specific property from fire.*" (159 Cal. at pp. 314-315, italics added.)

Further, the Supreme Court in *Niehaus* observed that even if *Ukiah* could not be taken as authority denying the liability of the water company under the facts of that case, "on *principle* no such liability is implied merely from such relation of distributor of water and consumer, and that such liability can only be created by an *express* contract between the parties." (159 Cal. at p. 316, italics added.)

In this regard, the court explained: "As a public-service corporation the defendant was under legal obligation to furnish water to any of the inhabitants of the municipality should they desire it and would pay the established rates. The plaintiff had a right to install its hydrants on the premises and

require the defendant to connect its system with the service-pipes of plaintiff so that water might be used at such hydrants. But so had every other property-owner in the municipality. It was a right which all might exercise. The company had no voice in the matter of installing hydrants or connecting its mains with the service-pipes thereon; that was a matter of volition for the owners of the premises. The only relation the company had to these hydrants was that it must furnish water available thereto at the fixed ordinance charges.

"This being the legal situation as respects the water company, both the reference to the restriction on its power to charge rates and its choice of supplying its consumers, it would appear that in the nature of the situation itself no obligation, implied or otherwise, to have constantly on hand a supply of water for fire protection could arise.

"[Moreover], . . . the rates established by a municipal ordinance . . . fix the compensation to be paid the company for furnishing water to consumers as a commodity. They are not fixed as a consideration under which the company obligates itself to furnish water for the extinguishment of fires with a corresponding liability for failure to do so. And it is from the fact that under the ordinary relation of public-service corporation and consumer that the only duty of the company is to furnish water as a commodity and not for the purpose of extinguishing fires that liability for damages for failure to supply it for the latter purpose can only be created by express contract." (159 Cal. at p. 317.)

The *Niehaus* rule and rationale, which continue to be valid modernly, govern the instant case. Now, as then, it cannot seriously be contended that when a property owner installs a sprinkler system on its property, or other such facilities as are available for extinguishing fires, a public water company furnishing water at ordinary ordinance rates, by means of connections made to the premises, would be liable for a loss by fire occasioned either by a deficiency or a total failure of water at the time the fire occurred. (159 Cal. at p. 319.) "Such a liability could not be forced upon the company by the action alone of the consumer installing these facilities." (*Ibid.*)

Here, it is obvious that no liability of an unknown amount for failure to furnish fire protection could have been contemplated by the water company from merely installing a fire service connection on a consumer's property at its request, as required by law, charging a $3,566 fee to cover the cost of the installation and fixing a flat monthly charge of $30, the rate

established by ordinance for an eight-inch fire service water supply, whether or not any water is used.

Under the ordinance, a property owner which installs sprinklers to protect its property valued at a few hundred thousand dollars pays the same rate for fire service charges as does the owner of property worth in the millions or even billions of dollars. "[I]t cannot for a moment be claimed that these [fire-service] rates had any relation to the risk which it is claimed the water company assumed, or that they formed any adequate consideration for the assumption of such a risk or liability, or that they represented anything except a reasonable compensation for water available thereat as a commodity or as merchandise." (*Niehaus Bros. Co. v. Contra Costa etc. Co., supra,* 159 Cal. at pp. 320-321.)[11]

If we were to accept the position of respondents, the water company simply by making a fire service installation on a consumer's premises, charging a fee to cover the cost of installation, and fixing a monthly service charge, would be assuming for the City liability as an insurer of billions of dollars worth of property. Logic dictates that cannot be the law.

We conclude that there was here *no express contract for fire protection* and that the only relationship between respondents and City was that of a water company engaged in distributing water for public use to consumers who availed themselves of their legal right to have the company connect its water system with their premises so that it could furnish them with water for their sprinkler system at ordinance rates. Under such relationship, no legal liability is implied for failure, from whatever cause, to have a supply of water available on the consumer's premises for use in fire protection; such liability can only be created by contract between the parties under which the water company *expressly* assumes the liability.

■ Thus, liability can only attach to a water company if the parties contract freely, with the express purpose of providing fire protection. Such protection must be the very thing in the contemplation of the parties. The service provided by the water company must be one not available to the community in general except on the basis of a *specific contract* and the

---

[11]For a further statement or application of the rule see: *Gelhaus* v. *Nevada Irrigation Dist.* (1955) 43 Cal.2d 779, 782 [278 P.2d 689]; *San Leandro* v. *Railroad Commission, supra,* 183 Cal. at pp. 233-234; *Hunt Bros. Co.* v. *San Lorenzo etc. Co., supra,* 150 Cal. 51; *Ukiah* v. *Ukiah Water and Imp. Co., supra,* 142 Cal. 173; *Stuart* v. *Crestview Mut. Water Co.* (1973) 34 Cal.App.3d 802, 806-809 [110 Cal.Rptr. 543]; *Luis* v. *Orcutt Town Water Co.* (1962) 204 Cal.App.2d 433, 438-440 [22 Cal.Rptr. 389]; *Luning Mineral Products Co.* v. *East Bay W. Co.* (1924) 70 Cal.App. 94 [232 P. 721].)

benefit provided the consumer must be one the water company is not compelled by law to give. It is necessary and proper that for this special service the consumer should pay more than a mere fee to cover the costs of installation and ordinary ordinance rates for the supply of water.

Inasmuch as we have concluded that respondents were not entitled to maintain this action on either a tort or a contract theory of liability, we need not address City's other contentions on appeal.

### DISPOSITION

The judgment is reversed.

Danielson, Acting P. J., and Fidler, J.,* concurred.

A petition for a rehearing was denied August 7, 1985, and respondents' petition for review by the Supreme Court was denied September 24, 1985. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.